## STATE OF NORTH DAKOTA v. EMMET F. APLEY.

(— L.R.A.(N.S.) —, 141 N. W. 740.)

From a conviction for statutory rape, defendant appeals. *Held:—*

**Statutory rape — cross-examination — error — prostitution — prosecutrix.**

(1) It was error to exclude cross-examination tending to show that the

Note.—The question of evidence of specific instances to prove character for chastity in prosecution for rape is considered in notes in 14 L.R.A.(N.S.) 714, and 80 Am. Dec. 368.

prosecutrix, about a year before the alleged rape upon her by defendant, had been an inmate of a house of prostitution for a period of three weeks.

**Proof of unchastity — character — consent — immaterial — age.**

(2) Such testimony, when elicited under cross-examination of prosecutrix, was admissible as proof of unchastity and immoral character of the prosecutrix as bearing directly upon her credibility, even though she was under the age of consent, and her consent to the commission of the acts charged as constituting the offense was immaterial.

**Evidence — physician — error — testimony — cross-examination — witnesses.**

(3) It was proper for the state to show, by the testimony of an examining physician, the physical condition of the prosecutrix ten days or two weeks after the alleged commission of the crime. But it was error to exclude the testimony offered by the defendant, tending to explain or refute the apparent corroborative testimony of such physician. The rulings complained of left the physician's testimony unexplained, and tending to corroborate the prosecutrix, without affording defendant the offered defense thereto or his explanation thereof, as was sought to be elicited by cross-examination of the prosecutrix herself.

**Statements of prosecutrix — bad faith — cross-examination — rape.**

(4) Defendant should have been permitted to fully examine a state's witness concerning whether said witness had made certain statements to the magistrate from whom she, as complainant, had procured a warrant to issue for the arrest of the prosecutrix for alleged grand larceny, two days before defendant's arrest on this charge, when during the trial of this case she had testified that such warrant had been procured merely that prosecutrix might be taken into custody so that thereafter prosecutrix could, with safety, institute this prosecution for rape against defendant. The testimony disclosed by reasonable inference that the prosecutrix may have been actuated by bad faith in instituting these proceedings, and full cross-examination should have been allowed of the state's witness concerning such arrest of the prosecutrix so caused under alleged prearrangement with the witness testifying; and the exclusion of the cross-examination offered was error.

**Crime — evidence — explanations — error — exclusion of testimony.**

(5) The crime if committed was done while the wife and other children of defendant were temporarily absent on a visit. The state offered testimony showing opportunity, and from which the inference might be drawn, that defendant had kept the prosecutrix at home to prostitute her; and such was the state's theory of why she did not leave with the wife and other children, as it had been previously arranged she should do. The wife was permitted to testify that she did not take prosecutrix with her, because "she was afraid to," but was not permitted to relate the specific reasons for her fears and reasons why the prosecutrix did not accompany her on the visit. Defendant sought to show that the reason for such fears was because of information

obtained shortly before, from the prosecutrix and others, tending to establish her immorality and unchastity generally, and causing the belief in the defendant and wife that prosecutrix might become ungovernable and troublesome in such respect if so 'taken; which testimony was excluded. This evidence offered should have been received, and defendant should also have been permitted to testify to his explanation of how prosecutrix came to remain at home with him.

**Cross-examination — witnesses — error — prejudicial — testimony — relevancy.**

(6) Upon cross-examination defendant was examined concerning the death of his first wife, who had died more than ten years before, and from the matters so brought out the jury may have concluded that her death may have been due in part to his refusal to furnish her with a doctor during childbirth. This and much other irrelevant testimony so elicited during his cross-examination may have been prejudicial.

Opinion filed April 14, 1913. Rehearing denied May 19, 1913.

From a judgment of the District Court for Stutsman County, *Coffey,* J., defendant appeals.

· Reversed.

*W. S. Lauder* and *John Knauf,* for appellant.

The *weight* of the testimony in a given case depends quite as much upon the *character* of the witnesses as upon their *number,* and upon cross-examination it is competent to go fully into the character, habits, and antecedents of a witness, as bearing upon his credibility. Territory v. O'Hare, 1 N. D. 44, 44 N. W. 1003; State v. Kent (State v. Pancoast) 5 N. D. 541, 35 L.R.A. 518, 67 N. W. 1052; State v. Malmberg, 14 N. D. 526, 105 N. W. 614; State v. Rozum, 8 N. D. 557, 80 N. W. 477.

Collateral facts touching the credibility of a witness cannot be shown by the testimony of other witness. They are reachable only through the avenue of liberal cross-examination. Shepard v. Parker, 36 N. Y. 517; State v. Haynes, 7 N. D. 70, 72 N. W. 923, and cases cited.

If a witness admits himself to have been guilty of heinous offenses, the jury would justly give him less credit than if his life and conduct had been pure and upright. Shepard v. Parker, supra; LaBeau v. People, 34 N. Y. 233; Newcomb v. Griswold, 24 N. Y. 298; Real v. People, 42 N. Y. 279; Wilbur v. Flood, 16 Mich. 40, 93 Am. Dec. 203; Foster v. People, 18 Mich. 266; 1 Greenl. Ev. 14th ed. Brown v. Com.

102 Ky. 227, 43 S. W. 214; Neace v. Com. 23 Ky. L. Rep. 125, 62 S. W. 733; Camp v. State, 3 Ga. 417; People v. Evans, 72 Mich. 367, 40 N. W. 473; Brennan v. People, 7 Hun, 171; State v. Long, 93 N. C. 543; State v. Duffey, 128 Mo. 549, 31 S. W. 98; Gillett, Indirect & Collateral Ev. § 91, note on p. 136.

A witness who has been examined upon collateral matters for the purpose of affecting his credibility may not be contradicted by other witnesses, as this would raise a multiplicity of issues and tend to confuse the jury. State v. Haynes, 7 N. D. 70, 72 N. W. 923; State v. Malmberg, 14 N. D. 523, 105 N. W. 614.

In cross-examination there is a great difference in the latitude allowed in the case of a mere witness, and a defendant charged with a serious, specific crime. State v. Hazlet, 16 N. D. 444, 113 N. W. 374; State v. LaMont, 23 S. D. 174, 120 N. W. 1104.

The defendant cannot be prepared to vindicate himself against any charge which may be insinuated in the form of cross-examination. Com. v. Jackson, 132 Mass. 16, 44 Am. Rep. 299, note; State v. Carson, 66 Me. 116, 2 Am. Crim. Rep. 58; People v. Crapo, 76 N. Y. 288, 32 Am. Rep. 302; People v. Brown, 72 N. Y. 571, 28 Am. Rep. 183; Gifford v. People, 87 Ill. 210; Hayward v. People, 96 Ill. 492; Rice, Crim. Ev. 215; Richardson v. Gage, 28 S. D. 390, 133 N. W. 692; Owens v. State, 39 Tex. Crim. App. 391, 46 S. W. 240; Ball v. State, 44 Tex. Crim. Rep. 489, 72 S. W. 384; Dabney v. State, 82 Miss. 252, 33 So. 973.

The general rule is against receiving evidence of another offense. Coleman v. People, 55 N. Y. 81; Shaffner v. Com. 72 Pa. 60, 13 Am. Rep. 649; People v. Molineux, 168 N. Y. 291, 62 L.R.A. 193, 61 N. E. 286; Bishop, New Crim. Proc. § 1120.

It is elementary that where on examination of a witness, a subject is gone into or opened up, the adverse party may, on cross-examination, go fully into it and develop it in all its bearings. People v. Flaherty, 79 Hun, 48, 29 N. Y. Supp. 641; Taugher v. Northern P. R. Co. 21 N. D. 123, 129 N. W. 747; Parker v. State, 62 Tex. Crim. Rep. 64, 136 S. W. 453.

Specific acts with others than defendant may be shown to rebut corroborating circumstances, as where a physician testified, as in this case, that the hymen was ruptured. 33 Cyc. 1480, 1481, and cases cited;

State v. Mobley, 44 Wash. 549, 87 Pac. 815; State v. Gereke, 74 Kan. 196, 86 Pac. 160, 87 Pac. 759; People v. Fong Chung, 5 Cal. App. 587, 91 Pac. 105; People v. Betsinger, 34 N. Y. S. R. 819, 11 N. Y. Supp. 916; Shirwin v. People, 69 Ill. 55, 1 Am. Crim. Rep. 650; People v. Flaherty, 79 Hun, 48, 29 N. Y. Supp. 641; State v. Height, 117 Iowa, 650, 59 L.R.A. 437, 94 Am. St. Rep. 323, 91 N. W. 935; Nugent v. State, 18 Ala. 521; Wilson v. State, — Tex. Crim. Rep. —, 67 S. W. 106; Knowles v. State, 44 Tex. Crim. Rep. 322, 72 S. W. 398; State v. Bebb, 125 Iowa, 494, 101 N. W. 189.

The complaint of the prosecutrix made to others as to the acts of the defendant are no part of the res gestæ. Greenl. Ev. § 213; State v. Clark, 69 Iowa, 294, 28 N. W. 606; State v. Richards, 33 Iowa, 420; 33 Cyc. 1463, 1464, and cases cited.

The case of the State v. Werner, 16 N. D. 83, 112 N. W. 60, distinguished. Pleasant v. State, 15 Ark. 624; State v. Langford, 40 Am. St. Rep. 277, and note 282, 45 La. Ann. 1177, 14 So. 181; State v. Jones, 61 Mo. 232; Oleson v. State, 11 Neb. 276, 38 Am. Rep. 366, 9 N. W. 38; Wood v. State, 46 Neb. 58, 64 N. W. 355; State v. Freeman, 100 N. C. 429, 5 S. E. 921; State v. Campbell, 20 Nev. 122, 17 Pac. 620; 42 Century Dig. Div. B. § 68 p. 70; State v. Murphy, 17 N. D. 58, 17 L.R.A.(N.S.) 609, 115 N. W. 84, 16 Ann. Cas. 1133; 1 Greenl. Ev. 16th ed. § 110; 1 Rice, Civ. Ev. §§ 212 et seq. Gillett, Indirect & Collateral Ev. pp. 290 et seq. Wharton, Crim. Ev. 8th ed. § 262; Underhill, Crim. Ev. § 93; Lund v. Tyngsborough, 9 Cush. 36; People v. Lane, 100 Cal. 379, 34 Pac. 856; People v. Tucker, 104 Cal. 440, 38 Pac. 195; Cole v. State, 125 Ga. 276, 53 S. E. 958; Warrick v. State, 125 Ga. 133, 53 S. E. 1027; Johnson v. State, 129 Wis. 146, 5 L.R.A. (N.S.) 809, 108 N. W. 55, 9 Ann. Cas. 923; State v. Mickler, 73 N. J. L. 513, 64 Atl. 148; Stevison v. State, 48 Tex. Crim. Rep. 601, 89 S. W. 1072; Tilson v. Terwilliger, 56 N. Y. 273; 2 Jones, Ev. §§ 347, 348, and notes.

If sufficient time intervenes between the act and declarations concerning it, to give opportunity for reflection, the declarations of the prosecutrix made to others are inadmissible. State v. Murphy, 17 N. D. 58, 17 L.R.A.(N.S.) 609, 115 N. W. 84, 16 Ann. Cas. 1133.

While an appellate court will not disturb a judgment for an immaterial error, yet it should appear beyond a doubt that the error com-

plained of did not and could not have prejudiced the rights of the party objecting. Boston & A. R. Co. v. O'Reilly, 158 U. S. 334, 39 L. ed. 1006, 15 Sup. Ct. Rep. 830; Deery v. Cray, 5 Wall. 795, 18 L. ed. 653; Norfolk & P. Traction Co. v. Miller, 98 C. C. A. 453, 174 Fed. 607; Gilmer v. Higley, 110 U. S. 47, 28 L. ed. 62, 3 Sup. Ct. Rep. 471; Taggart v. Bosch, — Cal. —, 48 Pac. 1092; Thomas v. Carey, 26 Colo. 485, 58 Pac. 1093; Norfolk & W. R. Co. v. Briggs, 103 Va. 105, 48 S. E. 521; Henry v. Colorado Land & Water Co. 10 Colo. App. 14, 51 Pac. 90; Comaskey v. Northern P. R. Co. 3 N. D. 279, 55 N. W. 732; Moore v. Booker, 4 N. D. 558, 62 N. W. 607; Hegar v. De Groat, 3 N. D. 354, 56 N. W. 150; McKay v. Leonard, 17 Iowa, 569; Freeman v. Rankins, 21 Me. 446; Hayne, New Trial, § 287.

Honorable *Andrew Miller,* Attorney General, *Geo. M. McKenna,* State's Attorney, and *Geo. W. Thorp,* and *Russell D. Chase,* for respondent.

The character of the prosecutrix for chastity may be impeached, but this must be done by general evidence of her reputation, and not by evidence of specific acts of intercourse with others than the defendant. 3 Greenl. Ev. § 214; People v. McLean, 71 Mich. 309, 15 Am. St. Rep. 263, 38 N. W. 917; McCombs v. State, 8 Ohio St. 643; Com. v. Regan, 105 Mass. 593; State v. Hilberg, 22 Utah, 27, 61 Pac. 217 (impeachment for want of chastity must be confined to general reputation for chastity in community); State v. Williamson, 22 Utah, 248, 83 Am. St. Rep. 780, 62 Pac. 1022; State v. Ogden, 39 Or. 195, 65 Pac. 449; McQuirk v. State, 84 Ala. 435, 5 Am. St. Rep. 381, 4 So. 775.

Where the prosecutrix is under age, she cannot be impeached by cross-examination as to her past conduct concerning illicit intercourse. People v. Johnson, 106 Cal. 289, 39 Pac. 622; People v. Harris, 103 Mich. 473, 61 N. W. 871; People v. Abbott, 97 Mich. 484, 37 Am. St. Rep. 360, 56 N. W. 862.

Reputation for truth and veracity may be inquired into, the same as of an adult. State v. Smith, 18 S. D. 341, 100 N. W. 740; State v. Stimpson, 78 Vt. 124, 1 L.R.A.(N.S.) 1158, 62 Atl. 14, 6 Ann. Cas. 639; State v. Rash, 27 S. D. 185, 130 N. W. 92, Ann. Cas. 1913D, 656; State v. Whitesell, 142 Mo. 467, 44 S. W. 332; State v. Hilberg, 22 Utah, 27, 61 Pac. 215; State v. Williamson, 22 Utah, 248, 83 Am. St. Rep. 780, 62 Pac. 1022.

Admissions of prosecutrix are hearsay and inadmissible. State v.

Shettleworth, 18 Minn. 208, Gil. 191; Greenl. Ev. §§ 362 & 537; State
v. Emeigh, 18 Iowa, 122; State v. Yocum, 117 Mo. 622, 23 S. W. 765;
State v. Brady, 71 N. J. L. 360, 59 Atl. 6; State v. Sudduth, 52 S. C.
488, 30 S. E. 408; Brown v. State, 127 Wis. 193, 106 N. W. 536, 7
Ann. Cas. 258; People v. McLean, 71 Mich. 308, 15 Am. St. Rep. 263,
38 N. W. 917; State v. Malmberg, 14 N. D. 523, 105 N. W. 614;
State v. Haynes, 7 N. D. 70, 72 N. W. 923; Becker v. Cain, 8 N. D.
615, 80 N. W. 805; 1 Thomp. Trials, Last ed. § 469.

The matter of the extent and nature of the cross-examination is
largely in the discretion of the trial court, and depend upon the nature
of the evidence introduced and the circumstances of each case.    1
Thomp. Trials, Last ed. §§ 464, 465; State v. Kent (State v. Pancoast)
5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052; Territory v. O'Hare,
1 N. D. 30, 44 N. W. 1003; State v. Rozum, 8 N. D. 548, 80 N. W.
477; State v. McGahey, 3 N. D. 293, 55 N. W. 753; State v. Ekanger,
8 N. D. 559, 80 N. W. 482; State v. Malmberg, 14 N. D. 523, 105 N.
W. 614; Shepard v. Parker, 36 N. Y. 517; La Beau v. People, 34 N.
Y. 223; Real v. People, 42 N. Y. 279.

The defendant, by going upon the witness stand and testifying gen-
erally to his mode of living, put his general character for his whole life
in issue, as to respectability, integrity, criminal acts, —sexual inclina-
tion,—and cross-examination following was proper.    4 Elliott Ev. §
2721; 1 Elliott, Ev. § 168; Underhill, Crim. Ev. § 78; 12 Cyc. p. 412,
and cases cited; Taylor v. Com. 13 Ky. L. Rep. 860, 18 S. W. 852;
People v. Garcia, — Cal. —, 59 Pac. 576; Siberry v. State, 133 Ind.
677, 33 N. E. 681; State v. Richards, 126 Iowa, 497, 102 N. W. 439;
State v. Sterrett, 68 Iowa, 76, 25 N. W. 936; State v. LeBlanc, 116
La. 822, 41 So. 105; State v. Thornhill, 174 Mo. 364, 74 S. W. 832;
Holloway v. State, 45 Tex. Crim. Rep. 303, 77 S. W. 14.

The cross-examination of defendant was warranted by his own evi-
dence in chief, and does not relate to collateral matters.    Gillett, In-
direct & Collateral Ev. § 90; 1 Thomp. Trials, Last ed. § 415; State v.
Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052;
3 Camp, Enc. Ev. pp. 803–823, and cases cited, pp. 839–844, and cases
cited including N. D. cases; Schnase v. Goetz, 18 N. D. 594, 120 N. W.
553; Hogen v. Klabo, 13 N. D. 319, 100 N. W. 847; State v. Raice,

24 S. D. 111, 123 N. W. 709; State v. La Mont, 23 S. D. 174, 120 N. W. 1104.

The credibility of the prosecutrix, who was under age, was not affected by proof of other acts of intercourse, or that she was in the family way, as such evidence was immaterial and related only to collateral matters. Abbott, Civil Jury Trials, p. 233; Dutcher v. Howard, 15 Wash. 693, 47 Pac. 28; Dole v. Wooldredge, 142 Mass. 161, 7 N. E. 832; State v. McGahey, 3 N. D. 293, 55 N. W. 753; Schaser v. State, 36 Wis. 429; State v. Hopkins, 50 Vt. 316, 3 Am. Crim. Rep. 357; People v. Smallman, 55 Cal. 185; Branstetter v. Morgan, 3 N. D. 290, 55 N. W. 758; State v. Moeller, 20 N. D. 114, 126 N. W. 569; Hebert v. Hebert, 20 S. D. 85, 104 N. W. 911; Com. v. Hughes, 183 Mass. 221, 66 N. E. 717; Thomp. Trials, Last ed. §§ 481, 483; 8 Enc. Pl. & Pr. pp. 118–126, and cases cited; State v. Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1057.

The whole complaint made by the prosecutrix to others, of the acts of the defendant immediately thereafter, and not the bare statement of the fact of complaint, as a part of the *res gestæ,* may be shown. State v. Werner, 16 N. D. 83, 112 N. W. 60; 10 Camp, Enc. Ev. p. 589; People v. Gage, 62 Mich. 271, 4 Am. St. Rep. 854, 28 N. W. 835; State v. Imlay, 22 Utah, 156, 61 Pac. 557; People v. Glover, 71 Mich. 303, 38 N. W. 874 (3 days); Proper v. State, 85 Wis. 615, 55 N. W. 1038; People v. Rich, 133 Mich. 14, 94 N. W. 375; People v. Marrs, 125 Mich. 376, 84 N. W. 284; State v. Fitzsimon, 18 R. I. 236, 49 Am. St. Rep. 766, 27 Atl. 446, 9 Am. Crim. Rep. 343; State v. Carpenter, 124 Iowa, 5, 98 N. W. 775; State v. Peter, 14 La. Ann. 527; Gillett, Indirect & Collateral Ev. §§ 253, 254, and cases in notes; Mayes v. State, 64 Miss. 329, 60 Am. Rep. 58, 1 So. 733; Cox v. State, — Tex. Crim. Rep. —, 44 S. W. 157; State v. Brown, 125 N. C. 606, 34 S. E. 105; State v. Hutchinson, 95 Iowa, 566, 64 N. W. 610; State v. Cook, 92 Iowa, 483, 61 N. W. 185; State v. Watson, 81 Iowa, 380, 46 N. W. 868; State v. Andrews, 130 Iowa, 609, 105 N. W. 215; State v. Peterson, 110 Iowa, 647, 82 N. W. 329; State v. Carroll, 67 Vt. 477, 32 Atl. 235; Ellis v. State, 25 Fla. 702, 6 So. 768; Burt v. State, 23 Ohio St. 394; People v. Gage, 62 Mich. 271, 4 Am. St. Rep. 854, 25 N. W. 837; People v. Glover, 71 Mich. 303, 38 N. W. 874; Bannen v. State, 115 Wis. 317, 91 N. W. 107, 965; Proper v. State, 85 Wis. 615, 55 N.

25 N. D.—20.

W. 1035; People v. Rich, 133 Mich. 14, 94 N. W. 375; People v. Marrs, 125 Mich. 376, 84 N. W. 284; Hannon v. State, 70 Wis. 448, 36 N. W. 1; State v. Hutchinson, 95 Iowa, 566, 64 N. W. 610; State v. Watson, 81 Iowa, 380, 46 N. W. 868; State v. Andrews, 130 Iowa, 609, 105 N. W. 215; State v. Neel, 21 Utah, 151, 60 Pac. 510; State v. Daugherty, 63 Kan. 473, 65 Pac. 695; State v. Parker, 134 N. C. 209, 46 S. E. 511; State v. Werner, 16 N. D. 83, 112 N. W. 60; 10 Camp, Enc. Ev. p. 591, and cases cited; State v. Peterson, 110 Iowa, 647, 82 N. W. 329; Com. v. Cleary, 172 Mass. 175, 51 N. E. 746; Mc-Combs v. State, 8 Ohio St. 643; Hornbeck v. State, 35 Ohio St. 277, 35 Am. Rep. 608; Laughlin v. State, 18 Ohio, 99, 51 Am. Dec. 444; Johnson v. State, 17 Ohio, 593; State v. Byrne, 47 Conn. 465; State v. Kinney, 44 Conn. 153, 26 Am. Rep. 436; Hill v. State, 5 Lea, 725; Phillips v. State, 9 Humph. 246, 49 Am. Dec. 709; Com. v. Sallager, 3 Clark (Pa.) 127; Caudle v. State, 34 Tex. Crim. Rep. 26, 28 S. W 810; 34 Cyc. 1642, and numerous cases cited; 33 Cyc. 1470 (title after offense), and notes and cases cited.

Upon cross-examination, if a witness admits having made the statement by proving which it is intended to impeach him, no further proof is needed or allowable. 10 Enc. Pl. & Pr. 288; State v. Baldwin, 36 Kan. 1, 12 Pac. 318, 7 Am. Crim. Rep. 377; Swift & Co. v. Madden, 165 Ill. 41, 45 N. E. 979, 1 Am. Neg. Rep. 20; State v. McGahey, 3 N. D. 293, 55 N. W. 754; 12 Cyc. 585, and cases cited.

Goss, J. Criminal information was filed in the district court of Logan county, charging defendant, Emmet F. Apley, with the crime of rape, alleged to have been committed on or about July 4, 1911, upon the person of one Lillian Apley, a child of defendant and under the age of sixteen years. Upon defendant's plea of not guilty a trial was had in said county, resulting in a disagreement of the jury. Subsequently, on the state's application, a change of venue was taken to Stutsman county, where a trial resulted in a verdict of guilty. Thereupon defendant was sentenced to fourteen years' imprisonment. He has appealed upon error assigned in the admission and rejection of testimony.

An outline of the facts is necessary to an understanding of the case. The defendant was at the time about forty-eight years of age; the prosecutrix, his daughter, not quite fifteen. Defendant had been twice mar-

ried, his first wife having died more than ten years ago. He had four children by each wife. Shortly after the death of his first wife, his three children, one having died, were placed in an orphans' home in Minnesota. From there prosecutrix was taken when an infant by others, and when about seven years old her foster parents took her to Portland, Oregon. She remained in Oregon and Washington, with her whereabouts unknown to the defendant, until September, 1910, and during which time she had never seen her father. In August of that year she was at Walla Walla, Washington, and there came into the custody of a police matron. Persons interested then notified her father of the fact and some details of the conduct causing her detention. From there she returned to Portland, Oregon, where she was placed in charge of the juvenile court, from which she was committed to a so-called "house of detention." About a month after the notice was received of her whereabouts at Walla Walla, defendant forwarded $30 to pay Lillian's railroad fare back to his home, in Logan county, but before the receipt of the money the girl had returned to Portland. The money was returned. In June, 1911, following, after correspondence with officials of the Salvation Army, and on their advice, defendant went to Portland and found his girl in the juvenile court at that place, which court committed her to his charge. He returned with her to his home in this state, arriving here on Thursday, June 22d, Lillian then first meeting defendant's second wife and the four children by his second marriage. Defendant had in June, 1911, shortly before going to Portland, sold his homestead, and had preparations made to move to Canada. Lillian's two full brothers, Jesse and Frank, had been committed with her to the orphans' home in Minnesota years before. On August 10, 1910, Jesse, then about sixteen years old, returned to defendant's home, but left it about the 1st of January, 1911. Before Lillian returned, arrangements had been made for Mrs. Apley to take her four children and visit her people in Minnesota before the family removed to Canada. Defendant was to remain and perfect final arrangements for the family's removal. At first Lillian was to accompany Mrs. Apley on this visit, but pursuant to later arrangements between the defendant and his wife she remained behind. Mrs. Apley and the children left on this visit June 29, 1911, and remained away about a week, during which time it is charged defendant carnally knew his daughter repeatedly between June 30th and

July 5th.   On July 5th defendant left his home for Napoleon, leaving the daughter at home, whereupon she went to a neighbor, one Miss Sullivan, made complaint of her father's treatment of her, and on departure took from Miss Sullivan a check for $300 and some jewelry.   Miss Sullivan signed and swore to a criminal complaint charging Lillian with the theft of this personal property, resulting in the issuance of a warrant and Lillian's arrest the following day.   The state alleges that this arrest was in fact a mock proceeding, prearranged between Lillian and Miss Sullivan for the purpose of getting Lillian into the custody of the authorities that she might then with safety to herself lay complaint against her father, as she did, with the dismissal of the proceedings against herself following.   Defendant denies all criminality, alleging that his daughter was wayward, headstrong, and hard to manage, and so accounting for his severely punishing her at this time while she was at his home alone with him.   He also testified that the reason why she did not accompany his wife on the visit was because of certain conduct and statements made by her to the wife and the knowledge had by both him and the wife of the daughter's conduct at Walla Walla and Portland, from which both decided not to take her with the other children on this visit.   The alleged statements of Lillian and her purported conduct causing her to be left at home were offered on trial and excluded, as was the testimony of Mrs. Apley as to grounds for such reason offered for not taking the girl with her.

During her cross-examination, as a part of the state's case, prosecutrix had testified in detail to alleged conduct of the defendant toward her, tending to establish that on June 29th he had brutally maltreated her and related to her previous acts of abuse by him upon her brother Jesse; and that by his general conduct toward her he had so terrorized his daughter as to cause her, through fear of him, to submit to his desires. At this time she claims he beat her face until it was black and blue, accused her of former prostitution, and threatened to kill her, besides talking to her of obscene and indecent matters.   In the main this was denied by the defendant, except that he admits he beat her to punish her.   His explanation of the matter in this particular is not altogether compatible with his innocence.

On her cross-examination she had admitted having been in charge of the police matron at Walla Walla; that the police matron had taken her

to Portland and told her about a home there, "and told me she was afraid I was pregnant or in the family way." Whereupon cross-examination concerning general unchastity and particular acts of unchastity was prevented, but later in part permitted, to the extent that prosecutrix related, as a reason for the fear of the matron that prosecutrix was pregnant, that she, Lillian, had been guilty of having sexual intercourse with one Henry in 1910; but that she did not know one Barry, but that Barry had come to the jail and offered to bail her out. That she had told her father in Portland, when she was provoked at him, that she would go back to Henry, not Barry. On redirect examination, in response to counsel for the state, she testified: "I am sure that I was never pregnant, because I only had sexual intercourse once, with the exception of the defendant, and that was with George Henry on one night the last day of August, in the city park at Walla Walla; that was the night I went to jail myself. That was the only time I ever had sexual intercourse before coming to Mr. Apley's place."

On July 13th the prosecutrix was examined by a physician, Doctor Savage, who testified to her then physical condition, giving testimony corroborative of prosecutrix that someone had carnally known her at about the time she charges the defendant with such criminal intimacy. After the examination of this witness, and as a part of the defense, prosecutrix was called for further cross-examination, and defendant then sought to establish from her own lips, by cross-examination, "that said witness was acquainted with one Barry, who in 1910 was the keeper of certain rooms in Walla Walla, used for purposes of prostitution; that said witness voluntarily used and occupied, for a period of more than three weeks in the summer of 1910, one of said rooms for the purpose of prostitution, and that during said time she received men not her husband in said room, and voluntarily had sexual intercourse with them for a money consideration." And, further, "that at Portland, Oregon, and on the way from that place to Napoleon, North Dakota, in the month of June, 1911, she, said Lillian Apley, stated to defendant that she had had voluntary sexual intercourse with one George Henry, one Hart, and others at Walla Walla, Washington, in the months of May and June, 1910; and that in the summer of 1910 she was acquainted with one Barry; . . . that said Barry was the keeper of a house of prostitution at Walla Walla in 1910. That said witness for the

space of more than three weeks occupied a room in said house for the purpose of prostitution, voluntarily, and that during said time she frequently had voluntary sexual intercourse with men for a money consideration." The foregoing evidence was offered: "(1) For the bearing it has on the credibility of said witness Lillian Apley; (2) in view of the testimony of the witness Doctor Savage; (3) as bearing on the testimony of this witness when she testifies that she had sexual intercourse with the defendant and that she was hurt thereby; (4) as bearing upon the question of the truth of her statement that she swore to concerning the injury she suffered by reason of the intercourse she testified to; (5) further, as explanatory of the defendant's conduct toward this witness, and explanatory of the treatment the defendant gave the witness, and as explanatory of the punishment he inflicted upon her." The testimony was excluded on the state's objection, being in the main that the same was incompetent, immaterial, and irrelevant, an inquiry into a collateral matter; that none of said facts could be shown as affecting credibility of the prosecutrix, she being under the age of consent; that the testimony of a female prosecuting witness cannot be so attacked by showing specific acts of intercourse; further, that the intercourse sought to be established is too remote; that the testimony is not proper for impeachment purposes; and that no proper foundation had been laid for any such testimony if otherwise admissible.

Under such condition of the record, defendant made offers of proof of the general unchastity of the prosecutrix as to having been an inmate of a house of prostitution; and also as to the further specific acts of unchastity as bearing on the issues involved, credibility of the prosecutrix, her physical condition at the time in question, her motives and desires concerning the larceny of the check and jewelry; also as bearing upon the conduct of the defendant toward her and possibly other phases of the case under consideration. As is usual in cases of this kind the all-important question is one of the credibility of the principal parties, the prosecutrix and the defendant.

Examination of the authorities discloses considerable conflict concerning the admissibility of evidence of the unchastity of a prosecutrix. The cases are many and the opinions inharmonious, and the same is true of texts on evidence. The varying opinions are in part probably due to a difference in the statutory definition of the crime of rape, some

of the statutes in terms placing in issue the previous chastity of the complainant, as for instance the Nebraska statute as construed in Bailey v. State, 57 Neb. 706, 73 Am. St. Rep. 540, 78 N. W. 284, 11 Am. Crim. Rep. 660; again, other holdings are modified by the rule prevailing in the particular jurisdiction as to scope of cross-examination; and other decisions may be explained as based upon various views of procedural policy in the reception or exclusion of such testimony. Hence the latitude of cross-examination generally allowable in this jurisdiction should be considered in this connection. The rule as to cross-examination of witnesses, including a defendant witness, as announced by the decisions of this court, particularly that of State v. Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052, may be said to authorize a liberal cross-examination. Indeed, that case has been held to be an extreme holding in favor of the state on the questions involved of cross-examination concerning credibility and motive. State v. Hazlet, 16 N. D. 426, at pages 439–440, 113 N. W. 374. Consult also Territory v. O'Hare, 1 N. D. 30, 34 N. W. 1003; State v. Rozum, 8 N. D. 548, 80 N. W. 477; State v. Ekanger, 8 N. D. 559, 80 N. W. 482; State v. Malmberg, 14 N. D. 523, 105 N. W. 614; and State v. Hazlett, 14 N. D. 490, 105 N. W. 617, a rape prosecution; and State v. Denny, 17 N. D. 519, at page 527, 117 N. W. 869. We must hold that this state is committed to permitting a liberal and reasonably extended cross-examination upon all matters affecting credibility, both generally and as to the specific case, and as concerns motive, interest, or bias of a witness, whether a defendant or an ordinary witness, and whether the case be civil or criminal. As supporting this conclusion we quote from the syllabus in State v. Kent. "For the purpose of affecting the credibility of a witness it is proper to ask him on cross-examination questions the answers to which may tend to degrade, disgrace, or criminate him." This rule applies to cross-examination of all witnesses, including a defendant. Again, concerning credibility, in State v. Malmberg, 14 N. D. 523, on page 526, 105 N. W. 614, we find: "There is a wide distinction between evidence which affects the general credibility of a witness and evidence which affects the credibility of a witness's testimony in a specific case. Both are proper subjects for cross-examination." And the opinion cites and specifically approves of what is said in Wigmore on Evidence, under the head of "Testimonial Impeachment," vol. 2,

chap. 29, and particularly §§ 879, 943 et seq. It will be noted that Wigmore on Evidence is an authority for the admission of much if not all the testimony here offered. Wigmore, Ev. § 200. In far the greater number of states cross-examination as to specific acts of intercourse, except those had with defendant, is excluded. The only precedent from our court in a case of statutory rape is State v. Hazlett, 14 N. D. 490, at pages 498, 499, 105 N. W. 617, from which we quote: "The prosecutrix is generally, as in this case, the only witness who can give direct testimony as to the facts constituting the crime, and the defendant alone, as in this case, can directly deny those facts. In the nature of things, therefore, the verdict to be given depends almost entirely upon the relative weight and credibility of the conflicting testimony of these two witnesses. This case, therefore, is one which expressly demanded latitude of cross-examination, because that was, to a great extent, the only effective means by which to determine the weight and credibility of the two principal opposing witnesses. It was important that the cross-examination should extend to every fact and circumstance within reasonable limits which might tend to disclose improbabilities or inconsistencies in the witness's narrative of the facts, or which might tend to discredit the witness generally or detract from the weight or credibility of his or her testimony in the particular case by reason of improper influences which might induce him or her to falsify." And on page 499 of the opinion the court further says: "As we explained in State v. Malmberg, supra, cross-examination within reasonable limits as to matters collateral to the issues is always proper if the facts inquired about affect the credibility of the witness."

The cases cited from our own court are, with a single exception, other than rape cases. They are not cited as precedent upon the admission or exclusion of this particular evidence, except in so far as they establish that in this state a liberal cross-examination generally is permitted. Our court is committed to the broad rule of cross-examination, and in passing upon the cross-examination permissible in this particular case we must adopt a rule consistent with the scope of cross-examination usually allowed in this jurisdiction in other cases. The various states fall into three general classifications as to scope of cross-examination permissible in the particular jurisdictions; namely, the narrow or restrictive, the broad or discretionary, and the medium rule, this last de-

pending usually upon a statute governing the scope of cross-examination, as is the case in California, Michigan, Missouri, Oregon, and possibly other states. This was considered in one of the pioneer cases in this state upon the scope of such examination (Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003), as will be found commented upon at page 45. Our court, with full knowledge of the three rules, chose the one that has since always been followed,—the discretionary rule. In pronouncing upon this particular matter, as to whether a prosecutrix may be cross-examined as to her ever having been an inmate of a house of prostitution, the answer to which in the affirmative would be some evidence of general unchastity, it would be inconsistent and illogical to follow precedent from those states permitting only the most restricted cross-examination, or from states like California, where, in addition to a statute governing cross-examination, we find a statute like § 2051–2 of the California Code, construed by that court also to apply, as will be hereafter shown. When that court has seen fit to place its decisions in parallel cases solely upon its statute, we, having no similar statute, cannot regard such a holding as authority in this jurisdiction. In short, the first duty we owe is to keep the line of our own decisions reasonably consistent and harmonious. Wigmore on Evidence, vol. 2, § 987, but illustrates this in the following words: "The state of the law upon the foregoing topics illustrates the truth (not as often judicially appreciated as it ought to be) that there are half a hundred independent jurisdictions within our boundaries, and that it is impossible to make use of all the rulings as though they were valid precedents for every jurisdiction. The shuttle-cock citation of decisions backward and forward, in and out of their proper jurisdictions, has done much to unsettle and to confuse the law. The greatest judicial service that can be rendered to-day is to keep the line of precedents clear and inflexible in each jurisdiction."

Naturally upon a question upon which courts are so divided, strong argument can be made, favoring either the admission or exclusion of this testimony. For its exclusion it is urged that such cross-examination is humiliating to the prosecutrix, and places in the hands of the defendant too much power when abused; that the jury's attention may be diverted to the trial of such collateral issues; that the female victim will be loath to prosecute, and that in cases such as here before us, where the prose-

cutrix is but a girl, to permit such cross-examination might be almost shocking to one's sense of what ought to be permitted. But after all, it is but the truth that it sought to be elicited by the direct method of cross-examination with the answers to the questions usually conclusive upon the defendant, so there can be no trial of any collateral issue; and any undue and unjustly occasioned humiliation to a prosecutrix but reacts against the defendant in the minds of the jury, to such an extent that prudent counsel, knowing this, seldom ask such questions merely to humiliate; and where the proposed examination is plainly out of place the discretion of the court is ample to control abuses here as elsewhere. So, in the end such objections are more imaginary than real. On the other hand, while no injury can be done a prosecutrix, there may be great danger of a wrongful conviction resulting from the exclusion of such testimony. Concerning this we quote from Wigmore on Evidence, vol. 1, § 200, as follows: "The better view seems to be that which admits the evidence. Between the evil of putting an innocent or perhaps an erring woman's security at the mercy of a villain, and the evil of putting an innocent man's liberty at the mercy of an unscrupulous and revengeful mistress, it is hard to strike a balance. But with regard to the intensity of injustice involved in an erroneous verdict . . . the admission of the evidence seems preferable." And this was said concerning the admission of evidence as to particular acts of unchastity, while the question under consideration concerns only the admissibility of evidence of prostitution evidencing general unchastity.

We deem the best authority favors the admission of the proof concerning her having been such an inmate as constituting proof of general immoral character, thus affecting general credibility. 4 Elliott, Ev. § 3094, and cases cited. We quote from 1 Wharton on Criminal Law, 11th ed. § 695: "At common law, and under statute, in the absence of a specific provision to the contrary, the chastity or want of chastity on the part of the female is immaterial in the commission or the charge of the commission of the crime of rape; . . . but on accusation of the commission of the offense against a woman of unchaste or immoral character her want of chastity may be shown as bearing on the question of consent to the act. In such a case the impeachment of the character of the prosecutrix in this respect must be confined to evidence of her general reputation, except that she may be interrogated as to her previous

acts of intercourse with the accused, or as to her promiscuous intercourse with men, or as to common prostitution. This is the general rule supported by numerous authorities, but in some states it is held otherwise." And the authority has collected scores of cases on the subject. The following is from 10 Enc. Ev. p. 604, subdivs. 4 & 5: "Some courts hold that the defendant may introduce evidence that the prosecutrix had voluntary sexual intercourse with other men prior to the time of the alleged offense; other courts hold to the contrary. As a general rule evidence that the prosecutrix has had sexual intercourse with men other than the defendant prior to the time of the alleged offense is inadmissible if the prosecutrix be under the age of consent; but this has been held otherwise and such evidence admitted for certain purposes." Greenleaf on Evidence, vol. 3, § 214, declares: "The character of the prosecutrix for chastity may also be impeached; but this must be done by general evidence of her reputation in that respect, and not by evidence of particular instances of unchastity. Nor can she be interrogated as to a criminal connection with any other person, except as to her previous intercourse with the prisoner himself; nor is such evidence of other instances admissible." Also from Cyc: "In some states it is held that, on the question of character, specific acts of intercourse with others may be shown, and that the prosecutrix may be compelled to answer on cross-examination as to whether she had intercourse with another at or about or before the time; but according to the weight of authority want of chastity must be shown by general reputation, and not by proof of specific acts, except that individual acts with defendant prior to the alleged crime may be proved as it tends to show consent. Nor are the declarations or admissions of the prosecutrix as to specific acts with others than defendant admissible. But it has been held that general immoral habits and character of the prosecutrix may be shown, as by showing that she was a common prostitute, etc. Specific acts with others than defendant may be shown to rebut corroborating circumstances, as when the woman is pregnant or has miscarried or given birth to a child, or where she was infected with venereal disease, or where a physician has testified that the hymen was ruptured. In cases of carnal knowledge of a female under the age of consent, her want of chastity cannot be shown to show consent, since she is incapable of consenting; but it has been held that want of chastity may be shown as affecting credibility of

the prosecutrix as a witness, although it would not be a defense if the act was admitted, or to show the adulterous disposition of the parties." 33 Cyc. 1479–1482, and numerous cases cited. To the same effect, see Underhill on Criminal Evidence, 2d ed. § 418.

Besides the foregoing authorities, citing numerous cases, see the extensive note to McQuiggan v. Ladd, 14 L.R.A.(N.S.) 689, and particularly pages 714 to 724. This note, however, must be considered in connection with the author's scope note on page 690, expressly stating that it "excludes every attack upon the credibility of one giving testimony in a litigation, either in his own or another's behalf, upon cross-examination by questions designed to elicit admissions of specific misconduct." Otherwise, what is said and the citations given on page 723 of the note under the head "Statutory rape" may be misleading. California decisions since 1872 are hardly authority on this question, because they are holdings under the California statute, §§ 2051–2, construed to exclude the cross-examination of a prosecutrix as to specific acts of unchastity. See People v. Harlan, 133 Cal. 16, 65 Pac. 9, from which we quote: "Nor can the immoral character of a witness or specific acts of immorality be shown by independent evidence for the purpose of impeaching a witness. The Code of Civil Procedure, §§ 2051 and 2052, prescribes the method of impeaching witnesses, and they can be impeached in no way other than therein provided. People v. Johnson, 106 Cal. 289, 39 Pac. 622." For the early holding of the same court, diametrically the contrary and before the enactment of these statutes, see People v. Benson, 6 Cal. 221, 65 Am. Dec. 506. And since this decision California has held both ways on this question. Compare People v. Shea, 125 Cal. 151, 57 Pac. 885, with People v. Benc, 130 Cal. 159, 62 Pac. 404. New York has also held both ways, and the classical opinions on each side of this question are from that state; the first, in 1838, by Judge Cowen in People v. Abbot, 19 Wend. 194, an extreme holding admitting both proof of specific acts of intercourse and general prostitution as affecting credibility and as proof of her general immoral character, and the contrary later holding in 1857, by Judge Strong in People v. Jackson, 3 Park Crim. Rep. 391, excluding independent proof as to specific acts with others than defendant. But the New York rule now admits testimony of general prostitution by cross-examination of prosecutrix or by independent proof. See

Woods v. People, 55 N. Y. 515, 14 Am. Rep. 309. For an extensive note collecting the early authorities, see the note to Smith v. State, 80 Am. Dec. 361 to 375. And for an extended discussion, see Rice on Evidence, §§ 520 et seq.

The proof offered by cross-examination of prosecutrix, as to the prosecutrix a year previously having been an inmate of a house of prostitution, should have been received. It bore upon her general credibility; and the fact that she was under the age of consent, and that consent cannot be in issue, is no sufficient reason why such testimony bearing upon immoral habits and general immorality, and therefore affecting general credibility, should be excluded. In this state the age of consent is by statute fixed at sixteen years, in first degree rape. The logical outcome of the holdings of many courts would exclude cross-examination of a prosecutrix upon such testimony as not affecting her credibility, had she happened to be one day under sixteen years of age at the time of the commission of the alleged crime, while had she been two days older it would have been admissible on her general credibility. We see no reason why the fact of nonage and want of capacity to legally consent should bar such proof of general immorality as might be disclosed, should she on cross-examination admit having been a year previously an inmate of a house of prostitution. This testimony sought under cross-examination should have been admitted. If not otherwise material, her answer would have been conclusive upon the state; hence no collateral issue could be tried. 33 Cyc. 1482, note 83; State v. Rivers, 82 Conn. 454, 74 Atl. 757; Shoemaker v. State, 58 Tex. Crim. Rep. 518, 126 S. W. 887, decided in 1910.

Counsel for the state have briefed upon the theory that the prosecutrix was but the victim of bestiality, a mere girl, in whom to presume prostitution would be little short of preposterous. That she could not be a brazen harlot, and rules of evidence should be applied to accord with her youth. They infer that counsel for defendant made the offers of proof principally to humiliate, and not in good faith, and that the court's discretion exercised in excluding it should not constitute reversible error. It is true that youth usually presupposes inexperience, innocency, chastity, and purity; but a careful perusal of the record convinces us that in prosecutrix the state had, as its right hand in this trial, an apt and very intelligent witness. Some of her replies to the examining

counsel, as well as her testimony upon details related, indicate a breadth of knowledge of matters we may safely presume to not ordinarily be known by young and inexperienced girls. Some of her answers to counsel were very effective, to say the least, and disclose that she thoroughly understood the situation at all times. She admits that at about the time charged as the period of her indiscretion in Walla Walla, the police matron had "told me she was afraid I was pregnant, or in the family way." She also admits having used intoxicating liquors, and on one occasion to such excess that the doctor had to be called for her, but blames this episode upon the woman with whom she was staying. She has been under the charge of the authorities at Walla Walla and at Portland. The letters tendered the court for inspection with the offer of proof, including the offered testimony of the defendant as to what he had learned, abundantly establish the good faith of defendant's counsel in making the somewhat unusual offer. These letters detail circumstances disclosing that the defendant was by no means the first person to suspect or charge the daughter with being, despite her years, considerably experienced in ways she should not have known. As Exhibit 2 is but the reply to one of defendant's first letters, and returning the $30 he had sent for her transportation back to this state, defendant certainly could not be charged with connivance in any of the matters contained in it. It purports to be from the Salvation Army rescue home at Portland. It is the unsolicited statement of one interested in her, to the father. In part it reads:

"I think it best for you, as well as her, to let you know that she is a hard girl to manage; she run away from me and everybody that tries to do well by her, and part of the time nobody knew where she was. . . . Two or three other good homes were offered her, where the people were amply able to do well by her if she would only try to be good and make something of herself, but she just runs away from everybody. . . . They had her in the city jail and kept her there four days. I didn't hear of it till late the next day, and then Mr. Osgood and I went down, and her conduct had been so bad that they wouldn't let her out, and if they had I couldn't have done nothing with her. But either the fore part of that night or the night before, she and a man about thirty-two years old, a low rake, was in the city park. I don't know how long, but she owned up to me and the police that he had accomplished his purpose, and that

wasn't the first time, so you can see what else might be the trouble. I don't say she is in trouble, but there is nothing to hinder her from being. Well, the Salvation Army took hold of the matter, and the police matron of the Salvation Army took her to Portland to what they call 'a rescue home.' It is a good place if she is in trouble, or if she isn't. . . . I can't tell you how bad we all feel about her; there is something good we like about her, but her awful trouble is the men; and she is so fresh and tries to attract every man's attention. I tell you it will take a mighty strong hand and will to finish bringing her up, and I honestly think it would be the ruination of her to let her go back there alone. (Meaning to North Dakota.) Now I was talking to the police matron to-night. I went down to see her. She took me over there, and she is a nice, good woman, and she was about all she could manage on the train, she told me. . . . I hope you will not be offended by anything I have written you, for I can prove it all by dozens."

From the entire record we believe that defendant should have been permitted to cross-examine as to whether in fact she had been an inmate of a house of prostitution along with her other escapades. Though this girl was young, the precedent that will be established must be one that will govern in all similar cases. We see no reason why the youth of the prosecutrix alone excludes such cross-examination. Cross-examination of the prosecutrix concerning former prostitution was not too remote and should have been allowed. A distinction should be drawn between permitting such cross-examination and the cross-examination upon specific acts of unchastity. The former evinces a degree of general depravity, affecting credibility, while, generally speaking, the latter may not.

It is unnecessary to pass upon whether prosecutrix could be cross-examined as to specific acts of intercourse as affecting her general credibility. As a general rule cross-examination cannot be had of a prosecutrix as to specific acts of intercourse with others than defendant. But under the state of this record, after the physician had testified in the state's behalf to the physical condition of the prosecutrix, as he was properly allowed to do as corroborative of the state's theory of the case,—he testifying that the hymen had not only been ruptured but had sluffed away, and that his testimony as to the pain and condition of the girl was "arrived at largely by talking with her,"—that under these

circumstances the cross-examination of the prosecutrix concerning specific acts of intercourse with others should have been permitted to show that such condition might have been brought about by others, and thus, if possible, break the force of the necessary inference cast against defendant by the testimony of the physician. To this extent, and for such purposes, prior acts of intercourse are material as explaining or bearing upon her present physical condition, shown in evidence by the state as corroborating the proof against defendant. Instead, the physician's testimony was left as corroborating prosecutrix, though defendant, by the proposed cross-examination, might have shattered such apparent corroborative testimony. The exclusion of this testimony alone necessitates a reversal of the judgment. People v. Betsinger, 34 N. Y. S. R. 819, 11 N. Y. Supp. 916; Shirwin v. People, 69 Ill. 55, 1 Am. Crim. Rep. 650; Nugent v. State, 18 Ala. 521; People v. Duncan, 104 Mich. 460, 62 N. W. 556; People v. Knight, — Cal. —, 43 Pac. 6; 33 Cyc. 1481; Bader v. State, 57 Tex. Crim. Rep. 293, 122 S. W. 555; Parker v. State, 62 Tex. Crim. Rep. 64, 136 S. W. 453; State v. Mobley, 44 Wash. 549, 87 Pac. 815; State v. Gereke, 74 Kan. 196, 86 Pac. 160, 87 Pac. 759; State v. Height, 117 Iowa, 650, 59 L.R.A. 437, 94 Am. St. Rep. 323–335, 91 N. W. 935; Walker v. State, 8 Okla. Crim. Rep. 125, 126 Pac. 829, and cases therein cited. And this is true in statutory rape as well as in common-law rape. People v. Flaherty, 79 Hun, 48, 29 N. Y. Supp. 641.

And further error appears in the court's refusal to permit Miss Sullivan, a state's witness, to be cross-examined concerning whether at the time she swore to the complaint charging the prosecutrix with grand larceny, she stated anything to the justice of the peace with reference to the talk she claims to have had with Lillian, pursuant to which the claimed fake larceny proceedings against prosecutrix were instituted. Miss Sullivan testified as follows: "I stated under oath on the 7th day of July, 1911, before the justice of the peace, that Lillian Apley did commit the crime of grand larceny;" following which the question was asked: "Now, when you swore to this statement, did you tell Mr. Bryan (justice) anything about this talk you had with Lillian Apley?" (Referring to the prearrangement between witness and Lillian, whereby the arrest of Lillian would be thus obtained.) An objection was urged, and the witness was not permitted to answer. Counsel then asked: "You

replied to my question when I asked you that when this case was tried at Napoleon; did you not so swear that you did not make that statement to Mr. Bryan at the time that you swore to this affidavit with reference to the talk with Lillian concerning this property at the time you signed this affidavit?" Upon objection made, witness was not permitted to answer. Whereupon defendant then offered "to prove by the cross-examination of this witness that when she signed Exhibit 6 (the criminal complaint charging Lillian with grand larceny) she said nothing to the justice of the peace concerning the conversation she alleges to have had with Lillian Apley, the complaining witness, in her house, concerning her property." This was excluded and was error. Such testimony bore directly upon the credibility of the witness. The question of whether the taking of this property by Lillian under circumstances amounting to larceny, and whether upon her arrest upon proceedings instituted in good faith against her, to escape the consequences of which by diverting the attention to the defendant, she caused his arrest and this prosecution, had a very important bearing upon the case under defendant's theory of his defense. Hence, if defendant could establish that Miss Sullivan, the complaining witness against Lillian Apley in the grand larceny charge, said nothing to the justice when she swore to the complaint of what she has in her examination testified were the facts, to wit, that the property was taken by Lillian with her knowledge and under a prearranged plan that she should secure Lillian's arrest in this manner, such an admission might have had considerable weight with the jury by causing them to disregard the testimony of this witness, and also, perhaps, doubt the good faith and motives of the prosecutrix in this prosecution. The testimony offered should have been received.

The defense called the wife of defendant, and by her sought to establish the reasons why Lillian was not taken with the other children on her visit to Minnesota. Defendant offered this testimony for the obvious purpose of preventing the jury from inferring that he kept Lillian at home that he might prostitute her, which might be the fair inference from the testimony of the prosecutrix, and which would harmonize with the state's theory of the case. The witness was allowed to state merely that she was afraid to take her, but was not permitted to state explicit reasons, if she had them, for such fear, nor the purported facts upon which her reasons were based. In this we believe the defense was un-

25 N. D.—21.

duly curtailed, as the reasons offered to be established, appearing from the offer of proof made, would have tended to strongly support the testimony of the defendant, and should have been received.

Error is predicated upon the admission of the testimony of Miss Sullivan concerning the fact and details of the complaint made to her by prosecutrix on July 5th, and in describing the girl's then apparent condition. The testimony was proper and was well within the rule announced by State v. Werner, 16 N. D. 83, 112 N. W. 60. Testimony as to apparent physical condition of prosecutrix was also admissible. 10 Enc. Ev. 591; Underhill, Crim. Ev. § 412; 33 Cyc. 1470; Wharton, Crim. Ev. 10th ed. pp. 1529–1556; and for cases see vol. 17 Decen. Dig. § 43, under "Rape."

In view of another trial we will state that the cross-examination of the defendant, permitted over objection, exceeded proper bounds. As an instance, he was permitted to be cross-examined touching matters involved in the death of his first wife, ten years before, as to which the jury may have concluded that her death may have been due in part to his refusal to call a doctor for her during or shortly after she had given birth to a child; and as to his calling his first wife, ten years dead, and her relatives, sports. All or the greater portion of such testimony may have been prejudicial to the defendant, and was without the issues involved in determining his guilt or innocence. While the limits of cross-examination permissible in this state are in the sound judicial discretion of the trial court, we believe this testimony should have been excluded. In justice to the trial court we will here state that the prosecutrix, in her testimony concerning the occurrences between the 29th of June, 1911, and the 5th day of July following, related alleged statements made by the defendant to her concerning events occurring during her mother's lifetime and down to that time, to support which testimony the state cross-examined the defendant on matters covering that entire period. We cannot see how such matters concerning his first wife and defendant's acts referred to could have been relevant or admissible. We do not say that we would reverse this case on the cross-examination alone, but we do believe too great latitude was permitted counsel for the state in that examination.

We cannot feel that the same results would necessarily have followed had the errors in the exclusion and admission of testimony pointed out

not taken place. The fact that the jury were three days and nights deliberating upon this case before they reached the verdict of guilty, while not controlling, is a circumstance we will also consider in this connection.

The judgment of conviction appealed from is therefore ordered set aside, and the case remanded for new trial or further proceedings according to law.

BURKE, J. (dissenting). The foregoing opinion does not meet with my approval, for two reasons: First, I do not believe the opinion is correct when it states that the cross-examination relative to the girl's unchastity and immoral character was admissible as affecting her credibility as a witness; second, I believe under the facts in this case that such testimony was not material to any issue on trial, and therefore not admissible upon that ground. Defendant stands convicted of the crime of rape upon a girl under the age of consent. Our statute makes it a crime to carnally know a female under the age of sixteen, whether she has been of previous chaste character or not. The prosecutrix was a witness for the state, and upon cross-examination was asked regarding specific illicit acts of sexual indulgence, and whether or not at a period some thirteen months prior to the alleged offense she had for three weeks been an inmate of a house of prostitution. Upon this question being excluded, and at various other times through the trial, defendant offered the said proof as a matter of defense. This offer was denied, and the appeal raises the two questions; namely, first, was such question proper cross-examination as affecting the credibility of the witness; and, second, was such evidence material to the issues on trial, so that it might be admitted in proof as a matter of defense whether the prosecutrix had been a witness or not?

As stated in the majority opinion, the defendant presented his offer of such question upon five grounds. However, the first ground relates to the credibility of the witness, and the other four to the relevancy of the testimony, so there are in effect but two questions involved. It is important, however, to keep in mind the distinction between the offers as affecting the credibility of the witness, and the other four offers which are based upon the theory that the evidence is material. For, if the evidence is admissible upon the first theory, the question

may be asked of the prosecutrix alone, and her answer is conclusive; while, if asked upon the second theory, that it is material to some issue involved in the trial, the answer of the girl is not conclusive, but other witnesses may be called to testify to the matter even though the prosecutrix herself were not a witness in the case. This distinction is important in cases wherein the prosecutrix does not take the witness stand, which situation in cases of statutory rape is not only possible, but altogether likely. In the case at bar the distinction will become apparent if upon a new trial, the prosecutrix, as is altogether probable, states that she was not such inmate, and the defendant offers other evidence to contradict her. If the evidence is admissible solely as affecting her credibility, such contradictory evidence will not be admissible. Also, it is possible that the prosecutrix in this case might die, become insane, or leave the jurisdiction of the court before the next trial, and the state should proceed to trial, either without her testimony, or by using that given at the last trial. I emphasize this distinction, because I believe that it is the failure to observe it that has confused the majority of this court. After reading practically every case upon the subject contained in our library, I have reached the conclusion that there is no case in the United States directly holding that the evidence of a girl's unchastity is admissible upon the theory that it affects her credibility alone; the nearest to such a holding being the Connecticut case to which I shall refer later,—while practically every other court that has touched upon the subject holds to the contrary. The defendant in his brief, and this court in the majority opinion, state that the strongest reason for the admissibility of the testimony in this case is that it affects the credibility of the witness Lillian, and as such was proper cross-examination. I therefore feel justified in taking a little time to review the authorities cited in the majority opinion. The first case and the principal one upon which they rely for such holding is State v. Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052. The syllabus in that case has misled many a lawyer and some trial judges, as well as text writers. The Kent Case when carefully read is exactly contrary to the holding of the majority of this court in the case at bar. Mr. Kent was cross-examined regarding transactions had by him some twenty years previous with an Ohio bank. It was claimed that such testimony was admissible upon two grounds:

First, to affect the credibility of the witness; and, second, upon the theory that such evidence was material to the issues on trial. In this respect it was similar to the case at bar. This court approved the questions upon the theory that they were material, and expressly excluded them upon the ground that they affected the credibility of the witness. I quote from the opinion in such case at page 551: "Having held that this cross-examination was proper for the purpose of showing motive, we might here leave this branch of the case, but the question of the propriety of such examination as affecting the credibility of the witness is squarely upon the record. . . . We shall therefore proceed to state without elaboration our views upon the point . . . (page 556), but there are reasons why we think this cross-examination improper as affecting the credibility of the witness." Then follow several pages of reasons, and at page 558: "But, as this evidence was all properly admitted for the purpose of showing motive, it is elementary that the judgment cannot be disturbed because it was inadmissible for another purpose." It is thus perfectly plain that the Kent Case is not an authority for the admission of this evidence as affecting the girl's credibility. The Kent Case in this respect is a great deal like most of the cases cited in the majority opinion. The apparent conflict of authorities mentioned in the opinion is readily explained when the cases are carefully read with the above distinction in mind. Take the state of New York, for instance. There is no conflict in the decisions of that court. The case of Woods v. People, 55 N. Y. 515, 14 Am. Rep. 309, which is cited in the majority opinion as an authority for the admission of the testimony as affecting the credibility of the witness, is not a holding upon that proposition at all. I quote from the opinion in that case: The evidence is received upon the issue "whether he ravished her by force, or whether she assented to such intercourse. . . . The evidence is received upon this ground, and not for the purpose of impeaching the general credibility of the witness." The same is true of the other New York case cited, People v. Abbot, 19 Wend. 194, from which also I quote: "In such a case the material issue is on the willingness or reluctance of the prosecutrix, . . . any fact tending to the inference that there was not the utmost reluctance, and the utmost resistance is always received." The same explanation is to be made in the California cases. The case of People v. Benson,

6 Cal. 222, 65 Am. Dec. 506, which is cited in the majority opinion as supporting the admission of similar testimony to affect the credibility of the witness, does not in any manner support the opinion. The evidence in that case was not admitted to affect the credibility of the witness, but "as tending to disprove the allegation of force and total absence of resistance on her part." It happened that the prosecutrix was a child of thirteen years, but California at that time (1856) had only the common law or force rape, and the indictment had to allege and did allege that force was used. The same condition obtained in the case of People v. Shea, 125 Cal. 151, 57 Pac. 885, which merely follows the Benson Case. The credibility of the witness was not mentioned, but they quote: "This class of evidence is admissible for the purpose of tending to show the improbability of resistance upon the part of the prosecutrix."

It is true that at 33 Cyc. pp. 1481, 1482, note 83, a single clause of a sentence may be extracted which says that the want of chastity may be shown as affecting the credibility of the prosecutrix, but by reading the cases cited in note 83 in said volume of Cyc., and in the 1913 Cyc. Ann. thereto, we find the cases all to the effect as hereinafter stated. I have taken the trouble to digest the seven cases cited in the said Cyc. text with the following result:

State v. Duffey, 128 Mo. 549, 31 S. W. 98. In this case there is such a statement used in the opinion, but it was not in any manner material in the case, and was the merest *dictum*.

State v. Rivers, 82 Conn. 454, 34 Atl. 757. This case comes the nearest to supporting the text of any in the United States. However, they state that the acts of unchastity may be inquired into if they tend to show that the witness was unreliable, but "the extent of such inquiries is, however, largely a matter of discretion, and their exclusion by the trial court in the exercise of that discretion is rarely considered a sufficient ground for granting a new trial."

Shoemaker v. State, 58 Tex. Crim. Rep. 518, 126 S. W. 887. In this case it was claimed that the prosecutrix had threatened the arrest of the defendant when she was caught in a compromising position with another man. The evidence was not offered to affect her general credibility, but to show her bias as a witness, and the act of unchastity shown went merely to show the occasion of the threat.

Parker v. State, 62 Tex. Crim. Rep. 64, 136 S. W. 453. In this case the prosecutrix had given birth to a child about nine months after the alleged rape. The court held that it was material to show intercourse with other men at about the time of the conception of the child, as it tended to explain this corroborating circumstance.

Wade v. State, — Tex. Crim. Rep. —, 144 S. W. 246. In this case the defendant moved for a continuance upon the ground that at the next term of court he could produce a witness who would testify to the bad character of the prosecutrix. The court held that this was not grounds for a continuance.

State v. Workman, 66 Wash. 292, 119 Pac. 751. In this case the ruling was under the Washington statute which makes it a crime to carnally know a girl under sixteen years of age, if she has been of *previous chaste character*. Of course under such a statute the chastity of the girl would be a material issue on the trial.

Richardson v. State, 100 Miss. 514, 56 So. 454. In this case the state had proven that the hymen of the prosecutrix had been ruptured. It was held material to show that the rupture might have been caused by other intercourse. It will thus be seen that what the majority opinion calls "citing perhaps hundreds of cases" has dwindled down to practically the Connecticut case alone. On the other hand, the opinions cited as contrary are squarely to the point, and stand for the exclusion of the testimony, unless it' is material to some issue on trial. In the case of Marshall v. Territory, 2 Okla. Crim. Rep. 136, 101 Pac. 139, the court has gone into the matter very fully. I would advise any person seeking light upon this interesting question to read the *résumé* of the cases found therein. Next taking up the case of Walker v. State, 8 Okla. Crim. Rep. 125, 126 Pac. 829, and the case of People v. West, 106 Cal. 89, 39 Pac. 207, the correct side of the question is pretty lucidly presented. See also Plunkett v. State, 72 Ark. 409, 82 S. W. 845; People v. Abbott, 97 Mich. 486, 37 Am. St. Rep. 360, 56 N. W. 862; State v. Gleim, 17 Mont. 17, 31 L.R.A. 294, 52 Am. St. Rep. 655, 41 Pac. 998, 10 Am. Crim. Rep. 46; State v. Roderick, 14 L.R.A. (N.S.) 704, and especially the note at page 723. See also cases cited at 697 to 706, note 14 L.R.A.(N.S.)

In the case of People v. Glover, 71 Mich. 303, 38 N. W. 874, the following language is used: "The defendant offered to introduce tes-

timony showing that the reputation . . . [of the prosecutrix] for chastity was bad. . . . The defendant also offered testimony showing specific acts of lewdness on the part of . . . [the prosecutrix]. . . . This testimony, on motion of the prosecuting attorney, was excluded. . . . Error is alleged upon the refusal of the court to allow defendant to show that the reputation of the girl for chastity was bad. The good or bad character of the girl for chastity was not in issue. The prosecution was had under the statute of 1887, which fixes the age of consent at fourteen years; and, the girl being too young to consent to the intercourse, it would be no answer that she had a bad reputation for chastity." In the case of People v. Johnson, 106 Cal. 289, 39 Pac. 622, "the defendant offered to prove the general reputation of the prosecutrix for unchastity. . . . The present case is an exception to the general rule. The prosecuting witness is under the age of consent, and for this reason evidence either of general reputation or specific acts would seem to be immaterial. This class of evidence is admissible for the purpose of tending to show the nonprobability of resistance upon the part of the prosecutrix. . . . In other words, this class of evidence goes to the question of consent only, and in a case like the present the question of consent is not involved. . . . If this class of evidence was admissible as going to the credibility of the testimony of the prosecutrix in its entirety, then it would be equally admissible as against the veracity of any female who might be called upon to give evidence in a case. Yet no such principle is recognized anywhere."

In the case of Hall v. State, 43 Tex. Crim. Rep. 479, 66 S. W. 783, it is said: "It is not permissible to impeach any witness for truth and veracity by showing that his or her reputation for chastity is not good. . . ."

In the case of Plunkett v. State, 72 Ark. 409, 82 S. W. 845, it is said: "The character of the prosecutrix for chastity is not involved in a charge of this kind, as in cases of seduction. The only question in a charge of this kind is whether appellant had sexual intercourse with the prosecutrix. The et tu defense does not obtain. The prosecutrix on cross-examination testified broadly that she had never had sexual intercourse with anyone except appellant; and appellant contends that he should have been permitted to show that she had sexual intercourse

with another, to contradict and impeach her. But here, again, such impeachment would have been upon an immaterial point, which is not allowed when brought out for the first time upon cross-examination."

In People v. Abbott, 97 Mich. 484, 37 Am. St. Rep. 360, 56 N. W. 862, it is said: "The offense is in unlawfully and carnally knowing a female child under the age of fourteen years, and it is no less an offense within the terms of the statute if the child has had intercourse with other men prior to that time. The court was not in error in excluding the evidence. But though the court did exclude at the time it was first offered, evidence of this character, it was afterwards admitted, and respondent's counsel drew from the girl the fact that at other times prior to the alleged offense she had had intercourse with several other men. The court admitted this testimony on the claim of counsel for respondent that it was competent as bearing upon the girl's credibility. It was not competent in this case even for that purpose. If the girl had been of the age of consent, it might be competent to admit evidence of her general reputation for chastity as bearing upon the probability of her story. . . . But here the law conclusively presumes that the girl could not give her consent. . . . Her reputation for truth and veracity could be inquired into, the same as of an adult, but she could not be impeached by her acts of intercourse." In the case of State v. Gleim, 17 Mont. 17, 31 L.R.A. 294, 52 Am. St. Rep. 655, 41 Pac. 998, 10 Am. Crim. Rep. 46, it is said: "Upon the trial the counsel for the state on the cross-examination of the appellant propounded a great many questions calculated to degrade the defendant before the jury. The inquiry took a wide and varied range. She was asked if she had not rented houses for purposes of prostitution at various places in Montana; whether she had not been 'a kind of a backer for the prostitution of female persons in Missoula and Hamilton;' whether she had not had a fight with a priest; whether she had not hugged and kissed a juryman after she had been found not guilty of some misdemeanor upon one occasion; whether she had not had a fight with a French prostitute at some time, etc. We cannot conceive upon what theory of the law this line of testimony was allowed. It was not cross-examination of what appears by the record to have been the appellant's evidence in chief, nor did it legitimately tend to impair the credibility of the defendant as a witness. Its effect must have

been highly injurious and prejudicial to the defendant in the minds of the jury. . . . Such an examination we most earnestly disapprove of. It was oppressive and unjust no matter how wicked or degraded the defendant may have been by common report."

In State v. Whitesell, 142 Mo. 467, 44 S. W. 332, it is said: "As evidence of unchastity on the part of prosecutrix goes to the question of consent, it is immaterial in a prosecution for having carnal knowledge of a girl under the age of consent, for in such a case want of consent to the act is not essential."

In Walker v. State, 8 Okla. Crim. Rep. 125, 126 Pac. 829, it is said: "In the form the question was asked the evident purpose was to show a lack of chastity, and thus impeach the prosecutrix. Evidence tending to show a lack of chastity on the part of the prosecutrix is only admissible to raise the presumption of consent, and, this being a case of statutory rape, that issue was not in the case."

In State v. Ogden, 39 Or. 195, 65 Pac. 449, it is said: "The rule is well settled that on the trial of a party charged with the commission of rape it is competent for him to impugn the virtue of the prosecutrix if she is of statutory age, not with a view of justifying or even excusing his conduct, but for the purpose of showing that her general reputation for chastity is bad, thereby creating a presumption that the act of which she complains was consummated with her consent, and not by force. . . . If the prosecutrix has attained the legal age . . . her character may be challenged, for the same reason, by inquiring of her on cross-examination whether she has ever had illicit sexual intercourse with the accused at any time prior to the act. . . . Evidence of such previous connection being admissible to give rise to a presumption that she consented to the act in question. . . . In those respects the law is uniform."

In the case of Peters v. State, 103 Ark. 119, 146 S. W. 491 (year 1912), it is said: "If . . . the defendant had offered to show that such statements were false, it would involve for the determination of the jury another and entirely different issue."

In State v. Hilberg, 22 Utah, 27, 61 Pac. 215, it is said: "The prosecutrix was under the age of consent. Sexual intercourse with her constituted an offense under the statute, whether she consented or not. Her good or bad character for chastity, as affecting the crime charged

against the defendant was not in issue, although her general reputation for truth and veracity was. The testimony offered was incompetent. So, specific acts of unchastity on the part of the young woman were not admissible."

In the case of State v. Eberline, 47 Kan. 155, 27 Pac. 839, it is said: "It is insisted that it was competent for the defendant to prove the general reputation of the prosecutrix for chastity and virtue, not as a justification or an excuse for the crime, but for the purpose of affecting her evidence. We do not so understand the rule. While evidence of a witness's bad character for veracity is admissible, inquiry in such a case as this must be confined to the witness's character for truth and veracity."

In the case of State v. Rash, 27 S. D. 185, 130 N. W. 91, Ann. Cas. 1913 D, 656, we quote: "It is further contended by the appellant that the court erred in not permitting him to prove, as discrediting the testimony of the medical experts, or as rebutting the same, that the said Edna Roberts had been an inmate of a house of ill fame. . . . We are of the opinion that the evidence offered . . . was properly excluded."

In State v. Blackburn, — Iowa, —, 110 N. W. 275, it is said: "It appears from the record that the question was treated by the court as calling for the character of the prosecutrix, including her character for chastity as known to the witness. . . . It seems to us, therefore, that there was no prejudicial error in sustaining the objection to the question."

In the case of State v. Hobgood, 46 La. Ann. 855, 15 So. 406, it is said: "It is inadmissible, in order to attack veracity, to prove the bad character of the female witness for chastity, or to show that she is a prostitute."

In the case of Birmingham Union R. Co. v. Hale, 90 Ala. 8, 24 Am. St. Rep. 748, 8 So. 142, 2 Am. Neg. Cas. 52, it is said: "Notwithstanding such extension of the rule, immoral conduct in any one particular, however it may bear on the question of general character, cannot be put in evidence for this purpose. By a notorious want of chastity, a female will certainly obtain a bad character, and her general reputation, if she has acquired any, may be given in evidence to impeach her; but not the particular and independent fact that she is a

prostitute, or keeps a house of ill fame,—the cause producing her bad character cannot be inquired into."

In People v. Chin Hane, 108 Cal. 597, 41 Pac. 697, it is said: "The witness Ah Wah testified that she was the wife of the deceased. . . . The defense attempted to prove that she had been an inmate of a house of prostitution. The evidence was inadmissible. Such matters are entirely collateral, and her veracity could not be impeached in that way."

In the case of Jackson ex dem. Boyd v. Lewis, 13 Johns. 504, it is said: "There can be no doubt that the evidence offered to impeach the character of Catherine Bassett was inadmissible. It would not be competent to prove that she was now a public prostitute, and much less to inquire whether she was so in her younger days; the inquiry should have been as to her character for truth and veracity."

In Com. v. Churchill, 11 Met. 538, 45 Am. Dec. 229, it is said: "This case presents the direct question whether evidence is admissible to impeach the credibility of a female witness, which tends to show that she is, and for sometime has been, a common prostitute. . . . The only reported case in which it has been held that such evidence is admissible is Com. v. Murphy, 14 Mass. 388. It was a decision made in the course of a capital trial, and probably without much time for deliberation or reference to authorities. . . . We consider it as a deviation from the established rule of the common law on the subject. It has been regarded by judges of this commonwealth with disapprobation, and has not been adopted by the courts of other states. . . . It is not required by any strong considerations of fitness or expediency, and cannot be regarded as having acquired the force of a settled rule of law. We are, therefore, of opinion that the decision of the judge in rejecting the evidence was correct."

In the case of State v. Fournier, 68 Vt. 262, 35 Atl. 178, it is said: "For the purpose of impeaching the state witnesses . . . the respondent offered to show that prior to their marriage Fanny kept a house of ill fame, the witness Howe lived in it, knew its character, and acted in its behalf; that subsequently Fanny was held to bail upon a charge of keeping the house, forfeited her bonds, and paid them. This offer was for the purpose of a general impeachment of the witnesses. The test of impeachment is, What is the character or general reputation of the witness for truth and veracity? and this rule has been universally

adhered to in this state. It has been held incompetent upon that question to show that a witness was a common prostitute."

In Morse v. Pineo, 4 Vt. 281, it is said: "There is no way to ascertain how far the reputation of a prostitute affects her truth, but by proving her character for truth."

See also interesting note with cases cited at page 481 of volume 53 Am. St. Rep., from which I quote: "Under the rule that no particular act of immorality is sufficient to impeach the credibility of a witness, it has been held in many cases that testimony to show that the witness either was or had been a common prostitute is inadmissible for the purpose of impeaching her credibility."

At 14 L.R.A.(N.S.) 723, the text writer says: "The foregoing discussion has abundantly shown that in trials for the common-law crime of rape the character for chastity of the alleged victim is material solely for its bearing upon the question whether force against her utmost resistance was used to deflower her, or whether she consented to the accomplishment of the lustful purpose.

"In the case of statutory rape, consent is no element in the crime; the victim by reason of her tender years is legally incapable of consenting to her defilement. The question of her chastity is therefore entirely immaterial, and the courts are virtually unanimous in excluding all evidence relating to it." Citing the cases above mentioned and State v. Anthony, 6 Idaho, 386, 55 Pac. 884; State v. Blackburn, — Iowa, —, 110 N. W. 275; People v. Glover, 71 Mich. 303, 38 N. W. 874; State v. Whitesell, 142 Mo. 467, 44 S. W. 332; State v. Hilberg, 22 Utah, 27, 61 Pac. 215. Those opinions give the reasons for the holding that the matter is collateral; that the jury should not be diverted from the main issue to try the subordinate one, as the girl seldom or never will admit prostitution; that it is manifestly unfair to propound such a question to a witness, especially one of tender years, when it is always or nearly always impossible to refute the imputation which the question carries; that while it is easy to say that a prostitute is not entitled to belief, it must be remembered, however, that prostitutes seldom have men arrested for rape, and that practically all of the questions will be asked of respectable girls. It is hard enough now to get young girls who have been debauched to testify against their betrayers, and police matrons and rescue workers generally assert that for each

girl who makes complaint there are many hundreds who bear their wrongs in silence, rather than submit to the publicity their complaint would bring upon them. But if this rule is allowed to stand, it means not only the prosecutrix in rape cases, but every witness of every kind, in civil cases, as well as criminal, may be asked this disgraceful question for the sole purpose of testing her credibility, and such evidence must be received, regardless of the discretion of the trial court who may want to protect her.

In addition to the cases cited the following are more or less in point, and sustain this holding:

State v. Eberline, 47 Kan. 155, 27 Pac. 839; Peters v. State, 103 Ark. 119, 146 S. W. 491; State v. Rush, 27 S. D. 185, 130 N. W. 91, Ann. Cas. 1913D, 656; Stayton v. State, 32 Tex. Crim. Rep. 33, 22 S. W. 38; McCray v. State, 38 Tex. Crim. Rep. 609, 44 S. W. 170; Woodward v. State, 42 Tex. Crim. Rep. 188, 58 S. W. 144; McAfee v. State, 17 Tex. App. 139; Conway v. State, 33 Tex. Crim. Rep. 327, 26 S. W. 401; Lancaster v. State, 36 Tex. Crim. Rep. 16, 35 S. W. 165; Butler v. State, 34 Ark. 480; Strang v. People, 24 Mich. 6; People v. Un Dong, 106 Cal. 83, 39 Pac. 12; People v. Glover, 71 Mich. 303, 38 N. W. 874; People v. Abbott, 97 Mich. 484, 37 Am. St. Rep. 360, 56 N. W. 862; Boddie v. State, 52 Ala. 395; McQuirk v. State, 84 Ala. 435, 5 Am. St. Rep. 381, 4 So. 775; Shartzer v. State, 63 Md. 149, 52 Am. Rep. 501; Pleasant v. State, 15 Ark. 624; Wilson v. State, 16 Ind. 392; State v. Jefferson, 28 N. C. (6 Ired. L.) 305; State v. Ward, 73 Iowa, 532, 35 N. W. 617; Camp v. State, 3 Ga. 417; Com. v. Regan, 105 Mass. 593; Com. v. Harris, 131 Mass. 336; People v. McLean, 71 Mich. 309, 15 Am. St. Rep. 263, 38 N. W. 917; State v. White, 35 Mo. 500; State v. Forshner, 43 N. H. 89, 80 Am. Dec. 132; State v. Knapp, 45 N. H. 148; State v. Campbell, 20 Nev. 122, 17 Pac. 620; McCombs v. State, 8 Ohio St. 643; Pefferling v. State, 40 Tex. 486; Dorsey v. State, 1 Tex. App. 33; Rogers v. State, 1 Tex. App. 187; Jenkins v. State, 1 Tex. App. 346; Mayo v. State, 7 Tex. App. 342; Lawson v. State, 17 Tex. App. 299; Fry v. Com. 82 Va. 334; Adams v. State, 93 Ark. 260, 137 Am. St. Rep. 87, 124 S. W. 766; McArthur v. State, 59 Ark. 431, 27 S. W. 628; O'Beenis v. State, 47 N. J. L. 279; State v. Froelick, 70 Iowa, 213, 30 N. W. 487; State v. Egan, 59 Iowa,

636, 13 N. W. 730; State v. Haupt, 126 Iowa, 152, 101 N. W. 739; State v. Seevers, 108 Iowa, 738, 78 N. W. 705; Kilburn v. Mullen, 22 Iowa, 498; State v. Smith, 18 S. D. 341, 100 N. W. 740; 1 McClain, Crim. Law, § 460; 1 Wharton, Ev. § 599; 3 Am. & Eng. Enc. Law, 117, and cases cited; 1 Greenl. Ev. § 463; Underhill, Crim. Ev. § 418; State v. Jackson, 44 La. Ann. 160, 10 So. 600; Re James, 124 Cal. 653, 57 Pac. 578, 1008; Moore v. State, 68 Ala. 360; Gifford v. People, 87 Ill. 211; Cunningham v. State, 65 Ind. 377; Bessette v. State, 101 Ind. 85; State v. Barrett, 40 Minn. 65, 41 N. W. 459; Holbrook v. Dow, 12 Gray, 357.

In the case at bar, we can apply the most radical rule in the United States, namely, the one announced in the Connecticut case, that the trial court has a wide discretion in the admission of such testimony, and his discretion should not be disturbed except for abuse. Under this holding this court should not reverse this case. Let us review the facts briefly.

The girl's mother had died when she was an infant. Her father had abandoned her to an orphan asylum, from which she had been taken by a woman who later wrote the letter regarding her which was in the possession of the trial court. When taken to the state of Washington by this family, she was a mere child, and was between twelve and thirteen at the time that defendant claimed she had been an inmate of a house of prostitution. The girl on her direct examination had positively sworn that she had had sexual intercourse with but one other man in her lifetime, which was virtually an answer to the question sought to be asked of her. If asked for the sole purpose of affecting her credibility, her answer was conclusive, and could not be contradicted, as she had already denied the accusation, in effect. I cannot see the error in the exclusion of the question. The trial court had before it the letter written by the chief of police of the town of Walla Walla, Washington, relative to this girl, as well as the letters from the foster mother and the matron of the Salvation Army there. Those letters were the principal basis of defendant's claim of good faith in asking the said questions. I will quote briefly from the letter from the chief of police: "Speaking plainly I will say that your daughter's conduct and the manner in which she conducted herself prior to the time of her arrest was not of the best, in fact she was thought to be

without a home or anyone to look after her, and for that reason she was picked up by the police, and the matter brought to the attention of the prosecuting attorney, who, after looking into the matter, decided that she should be sent to the reform school, but the police matron brought her influence to bear and the Salvation Army stepped in and agreed to provide her with a home. . . . " The woman at whose home the girl was staying writes as follows: "Regarding your daughter Lillian, my sister took her to raise, . . . she came to visit me this summer and brought her with her and left her with me. . . . She is a little hard to manage, and I think it proper for her father to take charge of her. . . . She is a bright, smart girl . . . she was always nice when here, but we could not trust her out of sight, and were just as anxious about her as if she had been our own flesh and blood, until she ran away and was put in jail." Under these circumstances we think it was a case where the trial court should be allowed to say whether the questions were asked more to humiliate and embarrass the witness than to legitimately affect her credibility. To be sure the letters do not reflect any great credit upon the girl, and in a measure at least justified the defendant in his offer, but the said letters do not go to the extent of claiming that the girl had ever been an inmate of a house of prostitution. Also the trial court considered the evidence of Dr. Savage, that she appeared to be unused to sexual intercourse. As the trial court has exercised his discretion for the exclusion of the question, I think that his judgment should be respected.

So far in this discourse I have confined my remarks on the admissibility of the testimony as to the girl's prior chastity to the sole purpose of affecting her credibility. I am satisfied that any person who will take the time to read all of the cases that I have mentioned will reach the conclusion that I have reached; namely, that such evidence should not be admitted for the purpose alone of impeachment, and that the cases of the country, with the possible exception of the Connecticut case, are unanimously in accord with this statement. Thus in the case at bar, the witness could not be asked whether or not she had been an inmate of a house of ill fame unless that fact was material to the issues on trial. It is in the discussion of this feature of the cases that the cases cited by the majority opinion became relevant. I

will agree that the great weight of authority favors the admission of any fact, no matter how distasteful to the girl, that tends to show the guilt or innocence of the defendant. Even a prostitute has the protection of the law to protect her person, and it is no defense to the charge of rape to say that the girl was unchaste. If the testimony becomes material for any of the reasons which will be hereafter discussed, the defendant may prove her unchastity as a matter of defense not only by cross-examination of the prosecutrix, but by the testimony of other witnesses. In all cases of rape, where it is claimed that force has been used, such evidence becomes material as showing the probability that the girl did not resist, because it is not likely that a woman who has frequently sold her person for money will resist an attack upon her honor, and it is not likely that a man who could have purchased the embraces of the woman would force her. This is the holding of practically all of the cases that have been cited in the majority opinion, as holding the evidence admissible as affecting the credibility of the girl. However, in this case it must be remembered that the time of an unchastity of the girl must not be too remote. It would not be material, for instance, to show that a married woman who had lived a respectable married life for twenty years, had been a prostitute prior to her marriage. Nor would it be material that the girl had become a prostitute after the alleged offense, nor would it be material to show acts of sexual intercourse with a single favored lover, as that would raise no presumption that she had consented to the embraces of the defendant, who might be distasteful to her. This fact was emphasized in one case wherein the prosecutrix was a white girl and the defendant a negro, the court saying that the fact that she had yielded her person to the embraces of her lover raised no presumption whatever that she did not resist the defendant, who was colored. Also in those cases where the state seeks to corroborate the testimony of the prosecutrix by showing that she became pregnant or had contracted a venereal disease from which the defendant was known to suffer, or was shown to be suffering from lacerations, the defendant in those cases might show in explanation that the girl with the said disease had been an inmate of a house of prostitution at about the time she contracted the same, and that the pregnant girl had intercourse with other men at about the time of the conception, or that the lacerated girl had

25 N. D.—22.

intercourse with another man at about the time she was lacerated, but it would not be material to show that the girl with fresh lacerations had intercourse thirteen months prior to the alleged offense, nor would it be permissible to show that the pregnant girl had intercourse with a man two years before the conception of the child. Those are matters of the application of common sense to the facts of each particular case on trial. As stated in the majority opinion, in addition to offering the evidence as affecting the credibility of the prosecutrix, the defendant offered such evidence upon matters which he claimed made it material in the cause. The first offer was to explain the testimony of Dr. Savage. I will agree that under certain circumstances this evidence might have been received for this purpose, but in view of the evidence of Dr. Savage itself it was not admissible. The offense is alleged to have occurred about the 1st of July, 1911. The doctor examined the girl about the 13th of July, 1911, some twelve days later, and he testifies that "I found her nervous, and there was a tenderness over the sides of the lips of the vagina. It was sore and raw, and she was lacerated and abrased. . . . In my opinion there had been sexual intercourse with the girl who had not been in the habit of having it. . . . In my opinion it was seven to fourteen days before." The offer to prove that she had been an inmate of a house of prostitution in June, 1910, thirteen months previous, was in no manner an explanation of the injuries to which the doctor testified. On the contrary, it would seem that they were entirely inconsistent with such injuries. If the girl were the prostitute that the question seemed to imply, intercourse would not likely have left her raw and lacerated, as the doctor testified that he found her. Such evidence will be more in the nature of a contradiction than an explanation of Dr. Savage's testimony. The same reasonings apply to the offer of the defendant to show that she had been a prostitute, to contradict her testimony when she said that the defendant had hurt her. Such testimony would not explain in any manner the fact, if it were a fact, that she was hurt. It contradicted it, and it is a well-known principle that the evidence, if received at all, must be admitted for the purpose of explaining some inference of guilt which arises against the defendant, and not in contradicting the evidence. The same reasons apply to the offer of such testimony to explain the conduct of the defendant.

The testimony was not material for that purpose. The defendant was not on trial for his general conduct, but for rape. The fact that the girl had been an inmate of a house of prostitution in no manner whatever threw any light upon whether or not she had been carnally known by this defendant, and was entirely immaterial. I have shown, first, that such testimony could not be received as affecting her credibility, unless it was material to some issue on trial in the case; secondly, I have shown, I think, that it was properly excluded by the trial court, and I cannot assent to the majority opinion, which lays down the rule that it not only should be received as affecting the credibility of the girl, whether material or not, but that in this particular case, it was material. However, the merits of this individual case, although important to the parties concerned, are not nearly so important as the announcement of such a vicious rule as this court is about to announce when it says that such a question may be asked, whether it is material or not, and that the trial court has no discretion to exclude it. The evils of such a rule are so many that I have done everything that I can to prevent its enunciation by this court, and file this opinion now as a protest against its adoption.