THE STATE OF NORTH DAKOTA v. LEWIS O. HAZLETT.

Opinion filed October 26, 1905.

**Permitting Leading Questions Is Error Only When the Discretion Is Abused to the Prejudice of a Party.**

1. Whether leading questions shall be permitted or not is very largely discretionary with the trial court, and its rulings in that respect will not be disturbed unless it is apparent that the discretion was abused to the prejudice of the appellant.

**Same — New Trial.**

2. If it clearly appears that the departure from the general rule against leading questions was unwarranted and prejudicial to the appellant, a new trial will be granted.

**Same — Rape — Age of Witness — Discretion of Court.**

3. Where, in a rape case, the record discloses that almost the entire direct testimony of the prosecutrix, who was apparently a willing witness over fifteen years of age, was elicited by extremely leading questions, without any attempt to obtain her answers in some other way, an abuse of discretion is shown.

**Criminal Law — Conduct of Trial Judge — Expression of Opinion by the Court.**

4. Misconduct warranting a new trial is shown where the trial judge unnecessarily and repeatedly interrupted the cross-examination of the state's witnesses by questions and remarks which hindered effective cross-examination and tended to create the impression that the trial judge was convinced of the truthfulness of the witness and the merits of the state's case.

**Same — Examination of Witness by the Court.**

5. It is proper for the trial judge to question witnesses whenever he deems necessary, but the right should be cautiously exercised, so as to avoid giving expression, directly or indirectly, to any opinion on the merits of the case.

**Rape — Cross-Examination of Prosecutrix.**

6. On the trial of a charge of rape, where the state's case depends almost wholly on the testimony of the prosecutrix, ample latitude in cross-examination should be allowed.

**Same.**

7. It was error to so restrict the cross-examination of the prosecutrix as to not afford full inquiry into facts and circumstances which might aid the jury in determining the weight and credibility of her testimony.

**Rape — Evidence — Age of Prosecutrix — Family Bible as Evidence of Age.**

8. A family Bible formerly belonging to the prosecutrix's deceased grandfather, in which the latter had recorded the dates of birth of his own children and also of the prosecutrix and her brothers, was competent evidence of the prosecutrix's age.

**Witness — Impeachment.**

9. It was error to exclude impeaching testimony for which sufficient foundation had been laid in the cross-examination of the prosecutrix.

Appeal from District Court, Rolette county; *Cowan, J.*

Lewis O. Hazlett was convicted of rape, and appeals.

Reversed.

*H. E. Plymat* and *John Burke,* for appellant.

Upon examination in chief leading question are not allowed. 1 Green on Ev. (Wig. Ed.) 434; Hardtke v. State, 30 N. W. 723; Cannon v. People, 30 N. E. 1027; Proper v. State, 55 N. W. 1038; State v. Watson, 46 N. W. 868; State v. Porath, 63 N. W. 1061.

The same rule applied to leading questions asked by the court. Hopperwood v. State, 9 Tex. 15; State v. Crotts, 60 Pac. 403; People ex rel. Lauchantin et al. v. Lacoste, 37 N. Y. 192; So. Covington & St. R. Co. v. Stroh, 57 L. R. A. 875; Hudson v. Hudson, 90 Ga. 851.

The court erred in interrupting cross-examination of witnesses and in remarks made in reference thereto. 1 Gr. on Ev. 446; In re Mason, 14 N. Y. S. 434; Wheeler v. Wallace, 19 N. W. 33; Fager v. State, 35 N. W. 195; Sharp v. State, 14 Am. St. Rep. 33; McMinn v. Whelan, 27 Cal. 300; People v. Williams, 17 Cal. 142; People v. Moyer, 43 N. W. 928; People v. Hull, 49 N. W. 288; Jones on Ev. Par. 821, note 6 and cases, Par. 837, note 7; 2 Taylor Ev. Par. 1428; Patrick v. Crowe, 15 Col. 543; State v. Lee, 80 N. C. 484; Lycan v. People, 107 Ill. 423; Hubbard v. State, 108 Ga. 780; Manning v. State, 37 Tex. Crim. Rep. 180; Starkie Ev. 160.

The complaint in a prosecution for rape should be permitted to state only the fact that she made early complaint and not its terms or details. Griffin v. State, 76 Ala. 29, 31; People v. Mayers, 6 Pac. 691; Roscoe's Crim. Ev. 24; 1 Russell on Crimes, 922; People v. State, 15 Ark. 694; People v. Lambert, 52 Pac. 307; Paulson v.

State, 35 N. E. 907; McMurrin v. Rigby, 45 N. W. 877; State v. Curran, 85 Me. 106; State v. Shuttleworth, 18 Minn. 208; State v. Jones, 61 Mo. 232; Matthews v. State, 19 Neb. 330; State v. Knapp, 45 N. H. 148; Baccio v. People, 41 N. Y. 265; Harmon v. Tern, 49 Pac. 55; Hannon v. State, 36 N. W. 1; Oleson v. State, 9 N. W. 38.

Entries in a family bible on the ground of family acknowledgments and of their publicity are admissible. 1 Taylor on Ev. 650; 1 Gr. on Ev. sections 104-5; Campbell v. Wilson, 76 Am. Dec. 67; Carskadden v. Poorman, 10 Watts, 82, 36 Am. Dec. 145; Supreme Council v. Conklin, 41 L. R. A. 449; Lewis v. Marshall, 5 Pet. 470, 8 L. Ed. 195; People v. Ratz, 46 Pac. 916; People v. Slatter, 51 Pac. 957; Jones on Evidence, pars. 319, 320; People v. Mayne, 50 Pac. 654.

In laying the foundation for impeachment by proof of contradictory or inconsistent statements, exact precision as to time, place and person is not necessary. 10 Enc. Pl. & Pr. 283; Donahue v. Scott, 30 S. W. 385; Ry. Co. v. Williams, 113 Ala. 620; State v. Glynn, 51 Vt. 579; People v. Gardner, 32 Pac. 880; People v. Lambert, 52 Pac. 307; People v. Turner,, 4 Pac. 553; People v. Bosquet, 47 Pac. 879.

*C. R. Gailfus* and *J. J. Kehoe,* for the respondent.

There are cases which warrant the court, in the exercise of its discretion, to permit and even require leading questions to be put to one's witness, as when the witness is reluctant or a child of tender years, or persons of old age, ignorance or of other infirmity, who are unable to state important facts without some aid or suggestion. Jones on Ev., section 818; Moody v. Rowell, 28 Am. Dec. 322; Turney v. State, 47 Am. Dec. 77; Bannen v. State, 91 N. W. 107; People v. Bernor, 74 N. W. 184; Porath v. State, 63 N. W. 1061.

Permitting leading questions is in the discretion of the trial court, subject to exception only for improper exercise of the discretion. Jones on Ev., section 819; Proper v. State, 55 N. W. 1035; State v. Peterson, 82 N. W. 329.

It is within the discretion of the trial judge to put leading questions to a witness if necesary to elicit the truth. Long v. State, 95 Ind. 481; Huffman v. Cauble, 86 Ind. 591; Vernedoe v. State, 58 Am. Rep. 465; Harris v. State, 47 Miss. 318.

The rule that prosecutrix' complaint to parties after the rape will not be permitted in detail is often relaxed, where the circumstances of the case render it inapplicable. People v. Gage, 28 N. W. 835; People v. Glover, 38 N. W. 874; People v. Bernor, 74 N. W. 184; State v. Watson, 46 N. W. 868; State v. Cook, 61 N. W. 185; Welsh v. State, 82 N. W. 368; State v. Peterson, 82 N. W. 329.

Some authorities allow statements of prosecutrix detailing the circumstances. Territory v. Godfrey, 6 N. D. 46, 50 N. W. 481; Phillips v. State, 49 Am. Dec. 709; Benstine v. State, 31 Am. Rep. 593; State v. Kinney, 26 Am. Rep. 436.

Entries in a family bible are hearsay evidence and subject to the general rule by which that class of evidence is governed, that the fact sought to be proved cannot otherwise be established. People v. Mayne, 50 Pac. 654.

Before a witness can be impeached by proof of contradictory or differing statements, foundation must be laid by asking him if he made such statements. Jones on Ev., section 848; Steamboat Charles Morgan v. Kouns, 115 U. S. 69, 29 L. Ed. 316; State v. Hughes, 66 N. W. 1076.

ENGERUD, J. The defendant was tried and convicted of the crime of rape in the section degree, and sentenced to imprisonment at hard labor for a period of eleven years. He appealed from the judgment.

The facts, as claimed by the state, are that the prosecutrix, who is the defendant's niece, was at the time of the rape only 15 years of age, and resided in the same house with defendant, and usually slept in a bed in the same room where defendant had his bed; that the defendant, on three occasions during the year before the rape was committed, got into bed with the prosecutrix and attempted to have intercourse with her, but desisted without accomplishing his purpose; that about the time of her fifteenth birthday, which was on June 9, 1903, he against visited her bed and committed the crime with which he is charged; that a short time afterwards he got into bed with her again and took indecent liberties with her person, but did not have intercourse; that the prosecutrix ran away from defendant's home that same night and informed her elder brother and others of the defendant's acts. She testified that the reason she ran away was partly because the defendant whipped her that day and partly because of his indecent conduct towards

her, but the chief reason was the whipping. The testimony of the prosecutrix as to defendant's alleged misconduct was wholly uncorroborated, except so far as the complaint she made to her brother and others the night she ran away may be considered as corroboration. The defendant positively denies that he ever got into bed with the prosecutrix, and likewise denies that he ever had intercourse with her or was guilty of any misconduct whatsoever. He further asserts that she was 16 years old, instead of 15, on the 9th day of June, 1903.

There are 151 errors assigned, but they may be grouped into five classes: First, those which complain of the leading questions; second, those which complain of the misconduct of the trial judge in the examination of witnesses and remarks prejudicial to the defendant and his evidence; third, those challenging the propriety of the court's rulings in unduly limiting the cross-examination; fourth, those which complain of the court's rulings in excluding evidence offered by the defendant; fifth, those based on exceptions to the giving and refusing to give certain instructions to the jury. The record discloses that almost the entire direct examination of the prosecutrix, and especially in relation to the most material and essential facts necessary to establish the crime charged, consisted of a series of leading questions. In fact, the witness was hardly required to do more than merely assent to the statements made by the prosecuting attorney, as he related, question by question, all the facts and circumstances which went to prove the crime charged. It does not appear that any attempt was made to have the witness state the facts in her own language in response to proper questions before the leading questions were resorted to. The first question asked in reference to defendant's improper conduct was a "forked" question, which assumed a fact as to which there had as yet been no proof and asked the witness to state when it occurred. The question was: "When did Lewis O. Hazlett first come over to your bed?" Thereupon the prosecuting attorney, often aided by the trial judge, continued the examination of the prosecutrix with respect to the revolting details of the alleged crime by asking questions extremely leading in form. Throughout the entire direct and redirect examination there was hardly a single question asked which did not directly suggest the answer desired, or which gave the witness an opportunity to state any of the facts in her own language.

Whether leading questions shall be permitted or not is necessarily very largely discretionary with the trial court, and its rulings in that respect will not be disturbed, unless it is apparent from the record that the discretion was abused to the prejudice of the appellant. It is often necessary to resort to leading questions in order to elicit facts from a witness, who, because of hostility, ignorance, diffidence or other reasons will not or cannot give fair and full answers. It is often proper and commendable to direct the witness' attention to the subject of inquiry, or to refresh his recollection as to some omitted detail, by a leading question. The general rule, however, is that leading questions should not be allowed. The sound reasons for that rule are so familiar that it is needless to state them. The rule is a salutary one, and should never be departed from unless the circumstances are such as to warrant an exception; and while the question as to whether the circumstances of a given case warrant a departure from the general rule is one which must of necessity be left largely to the determination of the trial judge, yet his discretion in this respect is not unlimited. If the record shows that the circumstances did not in fact justify the departure from the rule, and the violation of the rule is such that prejudice to the objecting party may be reasonably inferred, the appellate court will not hesitate to reverse on that ground. Hardtke v. State (Wis.) 30 N. W. 723; People v. Mather, 4 Wend. 229, 248, 21 Am. Dec. 122; Turney v. State, 8 Smedes & M. (Miss.) 104, 47 Am. Dec. 74; Coon v. People, 99 Ill. 368, 39 Am. Rep. 28; Underhill on Criminal Evidence, section 211. To hold otherwise would make the rule of little value. It would be a rule which the trial court could apply in one case, and arbitrarily decline to follow in another. It would be a rule merely for the convenience of the trial court, instead of one for the benefit and protection of the parties. We think this record discloses that the method of examination pursued in this case was prejudicial error. The prosecuting witness was nearly 16 years of age at the time of the trial according to the claim of the state, and nearly 17 if the defendant's evidence as to her age is true. She was certainly old enough to tell what she knew in her own language. She was clearly not a hostile or unwilling witness.

It is claimed, however, that she was so ignorant and diffident that it was extremely difficult to elicit from her any statement of the distressing facts. It does not appear, however, that any attempt was made to have her state the facts in her own way. We

have nothing but counsel's statement to show that she was ignorant or diffident, and there is nothing in the record to substantiate his statement. There are three or four instances in the direct examination where the questions appear unanswered, and some instances where two or three questions were apparently asked in rapid succession, each more leading than the other; but, instead of indicating hesitation in answering, it appears to us that the questions were repeated in rapid succession without waiting for an answer. The question in each instance appears to have been repeated in a more clear and leading form in explanation of the first question asked, and the examiner apparently expected no answer until after the last interrogatory was added to the former ones. While some of the leading question may have been and doubtless were permissible, we can discover no sufficient reason for permitting practically all the facts to be suggested to the witness by such questions. If ample latitude in cross-examination had been permitted, the leading questions on direct examination might have been rendered less objectionable; but the record discloses that the cross-examination was confined to such narrow limits and was improperly interfered with by the trial court to such an extent that it was rendered almost wholly ineffective.

We shall not discuss in detail the numerous errors in which appellant complains that he was greatly prejudiced, because the trial court was unduly active in the examination of witnesses, and especially by its frequent interruption of the cross-examination with suggestive questions and remarks. We think the appellant's complaint in this respect is well founded. The trial court took a very active part in both the direct and cross-examination of all the witnesses for the state and the defendant. In the cross-examination of the prosecutrix, especially, he very frequently interrupted defendant's counsel by questions which necessarily suggested to the witness the proper answers to make to avoid possible inconsistencies and minimize improbabilities in her statements. His occasional remarks, also, in reply to objections by counsel or in ruling thereon, were often of such a character that the jury could hardly fail to infer that the judge was fully convinced of the truthfulness of the prosecutrix and the merits of the state's case. Such was the necessary effect of the numerous suggestive questions, interruptions and remarks by the trial judge, although, in justice to him, we will say that we are convinced that no such result was intended. It does not appear that there was any real necessity for such active

participation by the court in the examination of witnesses. The prosecuting attorney seems to have conducted the prosecution with zeal and ability ,and it does not appear that the attorneys for the defense exceeded the limits of propriety in the manner or extent of the examination or cross-examination of the witnesses, or in the form of questions asked. It requires no argument to show that this conduct on the part of the trial court was prejudicial to the defendant. The right, and even the duty, of the trial court to ask questions of the witness, for the purpose of eliciting ,fully and clearly all the facts within the witness' knowledge, cannot be questioned; but the right should be exercised with great caution, so as to avoid, if possible, anything from which the jury might infer that the trial judge had any opinion or leaning in favor of one side or the other. As every practitioner knows, the jury are usually quick to seize upon and be guided by any opinion which they think the trial judge entertains as to the merits of the case or the weight of any particular evidence. The statutes of this state prohibit the expression of any opinion on the facts by the trial judge. Sections 8176, 8217, Rev. Codes 1899. These provisions were discussed by this court in Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003, and again in State v. Barry, 11 N. D. 428, 92 N. W. 809. In those cases the instructions of the court were held to be objectionable because they indicated the opinion of the trial judge as to the facts. But it is apparent that the trial judge's opinion as to the merits of the case may be manifest by conduct or remarks in any other stage of the trial, as well as by the express language in the charge, and it is equally a violation of the spirit of the statutory prohibitions, whichever way the opinion is indicated. Wheeler v. Wallace (Mich,) 19 N. W. 33; Sharp v. State, 51 Ark. 147, 10 S. W. 228, 14 Am. St. Rep. 27. See valuable note to this case in 14 Am. St. Rep. 38 et seq. See, also, collection of cases in note "h," under Street Ry. v. Stroh, 57 L. R. A. 882.

The errors assigned relating to alleged improper restrictions upon the cross-examination of the state's witnesses are too numerous to be discussed in detail. We think the errors in this respect will be sufficiently guarded against on the new trial by the observance of the general rules which ought to govern such examination. The cross-examination was unduly limited in scope. The state's case depended wholly on the testimony of the prosecutrix, who was almost wholly uncorroborated, and her testimony had been elicited by extremely leading questions. While such an

accusation as this is often difficult of proof, it is also often still more difficult to refute. The prosecutrix is generally, as in this case, the only witness who can give direct testimony as to the facts constituting the crime, and the defendant alone, as in this case, can directly deny those facts. In the nature of things, therefore, the verdict to be given depends almost entirely upon the relative weight and credibility of the conflicting testimony of these two witnesses. This case, therefore, is one which especially demanded latitude of cross-examination, because that was to a great extent the only effective means by which to determine the weight and credibility of the two principal opposing witnesses. It was important that the cross-examination should extend to every fact and circumstance within reasonable limits which might tend to disclose improbabilities or inconsistencies in the witness' narrative of the facts, or which might tend to discredit the witness generally, or detract from the weight or credibility of his or her testimony in the particular case by reason of improper influences which might induce him or her to falsify. We had occasion to discuss this in the recent case of State v. Malmberg (decided at this term) 105 N. W. 614, and what was said there with respect to the scope of cross-examination is applicable here.

A few examples will suffice to show how the cross-examination of the prosecutrix was unduly limited. The prosecutrix, in response to leading questions, asserted that the defendant and she regularly occupied different beds in the same room in the house, while the other members of the family slept in the barn. The defendant attempted to show, by cross-examination of her, that the defendant always slept in the barn with the other men, except when visitors slept in the house, and in that event he occupied the room with the visitors. The testimony bore directly upon the probability of any opportunity to commit the crime without detection. The court sustained objections to this line of cross-examination, remarking that it made no difference where he slept, because the question was whether he got into bed with the witness on the particular occasions in question. The defendant also sought to obtain from the prosecutrix an admission that her brother and others had instigated the prosecution solely from ill will toward the defendant, and had "coached" the witness what to testify to, etc. It was evidently the claim of the defense that the charge was a trumped up one, and that the prosecutrix had been induced to make the accusation falsely by the defendant's enemies. This was not per-

mitted. So, also, the court would not allow inquiries as to why the prosecutrix wore shorter dresses at the trial, and by whom and for what reason she had been advised to do so, although she admitted that she had worn long dresses before and had been advised to put on short ones before the trial. The prosecutrix professed to be unable to remember even approximately the date when the crime was committed, not even the month. In view of the dispute as to whether she was 15 or 16 years old on June 9, 1903, it was highly important to know whether the crime occurred before or after that date; and the girl's professed utter lack of any recollection of the time, although the prosecution was commenced soon after she ran away from defendant's home, and the trial occurred the following spring, was a strikingly significant fact which would naturally tend to detract from her credibility, but the trial judge permitted scarcely any cross-examination on the subject. So, also, very little cross-examination was permitted of the prosecutrix with reference to her conduct and language, and the surrounding facts and circumstances, to test her fairness, truthfulness and intelligence, and to disclose any inconsistency or improbability in her statements, in the light of the circumstances and her own statements and conduct. Objections to most of the questions asked for the purposes mentioned were apparently sustained on the theory that they related to collateral matters disconnected with the issues made by the pleadings, and were therefore irrelevant and immaterial, or related to facts not brought out in the direct examination. As we explained in State v. Malmberg, supra, cross-examination within reasonable limits as to matters collateral to the issues is always proper, if the facts inquired about affect the credibility of the witness.

We think the court also improperly excluded evidence offered by the defendant which ought to have been admitted. As already stated, it was a controverted question as to whether the prosecutrix was over or under the age of consent when the intercourse occurred. The exact date of the act does not appear. The circumstances, however, so far as they were permitted to appear, indicate very strongly that, if the act occurred as claimed by the prosecutrix, it must have been in June, and probably after the 9th of that month. The state claims she was 15 on that date, while the defense claims she was 16. The point was decisive of the case, because there was not sufficient evidence to show a rape accomplished by force or threats, and it is admitted that the prose-

cutrix was in possession of all her faculties and knew the nature of the act; hence, if the act took place on or after her sixteenth birthday, there was no rape. In corroboration of the testimony of the defense as to the prosecutrix's age, the family Bible was offered in evidence. This proof was excluded as incompetent, and we think the ruling was erroneous. It had been shown that the parents of the prosecutrix died when she was very young; and she, with her brothers, had lived in the home of her mother's father since she was less than three years old, and she and her brothers continued to live with their grandfather as members of his family until his death, which occurred some time before this action arose. The Bible produced was the grandfather's family Bible, and contained entries in the grandfather's handwriting showing the names and dates of the birth of his children, and also showing the names and dates of the birth of the prosecutrix and her brothers. According to this record, the prosecutrix was born June 9, 1887, and was therefore 16 years old in 1903, as claimed by the defense. The trial court held that the book was not the family Bible of the prosecutrix's family, and hence was not admissible. If the testimony identifying the book was true, it clearly was the Bible of the prosecutrix's family in every sense of the term. After her parents' death she became a member of the family of which the grandfather was the head. The book was his Bible, in which he recorded the names and birthdays of the several members of his family. It was a book of record, open to the inspection of all the members of his family, including the prosecutrix and her brothers. But a record of this character of family history would not necessarily be incompetent, even if the prosecutrix had not become technically a member and inmate of her grandfather's household. Such records of notorious facts of family history, such as the birth of children and the like, kept by the grandfather, who was naturally conversant with the facts, made and kept by him so as to be open to the inspection of every one interested, under circumstances which negative any motive to falsify, are clearly competent. 1 Greenleaf on Evidence (16th Ed.) 114d; Wigmore on Evidence, vol. 2, sections 1480-1503.

The court also erroneously excluded the testimony of Mrs. Underwood, by whom the defense sought to show that the prosecutrix had, in a conversation with the witness, stated in effect that her brother and others had urged her to prosecute the defendant but she told them it was useless because the defendant had not com-

mitted the crime and she would tell the truth. The prosecutrix's attention had been specifically called to these alleged statements with abundant particularity as to person, time and place, during the cross-examination, and she denied making the statement.. It was clearly impeaching testimony, and abundant foundation had been laid for the question to Mrs. Underwood. In this connection we will say that the abstract as printed shows only that the prosecutrix's attention was called to a similar statement to Mr. Underwood, and not to the statement to Mrs. Underwood. The abstract clearly indicates, however, that there was an error in the printed abstract in this respect, and examination of the original statement of the case in the record on file shows the fact as we have stated it.

Inasmuch as there must be a new trial, at which the evidence may be different, it is unnecessary to discuss the assignments of error based on the instruction and refusals to instruct.

The judgment is reversed, and a new trial ordered. All concur. (105 N. W. 617.)