[No. 1919]

# S. C. ANDERSON, RESPONDENT, *v.* LOUIS BERRUM, APPELLANT.

1. TRESPASS—TITLE TO SUPPORT—LICENSE.

Where plaintiff had a license to cut timber on another's land, and to flume it or carry it out, he may maintain an action for injuries caused by defendant's trespassing sheep to the roads and the flume.

2. TRESPASS—RIGHTS OF ACTION.

Where plaintiff had a license to cut and remove timber from a third person's land, he is not entitled to damages for injuries to the herbage on such land caused by defendant's trespassing sheep, for only the owner entitled to the herbage could maintain such action.

3. TRESPASS—COMPLAINT—SUFFICIENCY.

In an action for damages by trespassing sheep, where it appeared that plaintiff had only a license to cut timber on the lands of a third person, he cannot, under a complaint alleging damages to the herbage on that land and other land owned by him, recover anything for injury to the verdure; the complaint not designating how much damage was done on the different lands.

4. WITNESSES—CROSS-EXAMINATION.

The cross-examination must be limited to matters stated in the examination in chief and questions to test the accuracy, veracity, and credibility of the witness, though it is, of course, competent to call out anything tending to modify or rebut the conclusion or inference resulting from the facts stated by the witness in his direct examination.

5. WITNESSES—CROSS-EXAMINATION.

The rule limiting the cross-examination to matters stated in the examination in chief does not prevent the cross-examining party from making the witness his own after the adverse party has concluded his case in chief, nor does it prevent the court from allowing a rigid examination if the witness be hostile.

6. WITNESSES—EXAMINATION—REDIRECT EXAMINATION.

Where plaintiff was cross-examined as to why, in his former suit, he did not claim as great damage as in the present one, those questions were proper, and will not authorize his attorney on his redirect examination in asking him leading questions suggesting the answer.

7. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

The allowance of leading questions on the redirect examination of plaintiff is not reversible error where the matters elicited might as well have been elicited by a longer series of direct questions.

8. WITNESSES—EXAMINATION—LEADING QUESTIONS.

The allowance of leading questions is a matter principally within the discretion of the trial court.

9. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.
    While ordinarily the allowance of leading questions is no
    ground for reversal, even if the trial court abuses its discretion,
    the abuse may be so flagrant as to require a reversal.

APPEAL from the First Judicial District Court, Douglas County; *Frank P. Langan,* Judge.

Action by S. C. Anderson against Louis Berrum. From a judgment for plaintiff, defendant appeals. **Affirmed** on condition that plaintiff enter remittitur.

The facts sufficiently appear in the opinion.

*Summerfield & Curler,* for Appellant.

*Alfred Chartz,* for Respondent.

By the Court, TALBOT, C. J.:

Plaintiff brought this action to recover for trespass by defendant's band of about 2,800 sheep. In the complaint filed upon the commencement of the action the different items constituting the damage, but not the amount claimed for each, were stated, and an aggregate sum of $350 demanded, and, after demurrer was interposed and sustained, plaintiff filed an amended complaint, in which he asked judgment for twice that amount, and specified the sums he claimed for the different acts causing the damage.

According to the amended complaint, it is sought to recover as damages $350 for herding and grazing the sheep upon the lands of the plaintiff, and the eating and tramping of the grass and verdure so it would not replenish, $50 for knocking down a part of the piles of cordwood which plaintiff had upon the land, $150 for tramping and filling with rocks and debris the road and trails used by the plaintiff for packing wood, and $150 for tramping, choking up, and filling springs which were situated on the land, and which were used by plaintiff for household, stock, and domestic purposes, and for fluming wood.

H. M. Yerington had executed an agreement, called a lease, to J. F. Barrett, who assigned it to the plaintiff,

and which allowed Barrett, or the plaintiff as assignee, the right of entering upon the flume and the timber lands, aggregating 2,115 acres, described therein, "for the purpose of fluming wood through said flume to Carson River, and cutting the timber upon said land to any extent he may deem advisable (but not to hold possession of any part of said flume or timber lands for any other purpose whatsoever)."

**1.** As claimed by the appellant, this so-called lease did not convey the grass on the land to Barrett, or to the plaintiff as assignee. Nevertheless, the court properly admitted it in evidence, because it tends to sustain plaintiff's right to cut and flume the wood, and incidentally to use the road and trails, and to recover for damage done to them and to the wood. The agreement was in force by consent of the parties, notwithstanding the omission of any provision specifying the time during which the privilege of cutting and fluming timber was to continue.

**2.** Exception is taken to the following instructions, which were requested by the defendant and refused by the court:

"The jury is instructed that, plaintiff having failed to prove legal title to any of the lands described in the complaint as having been leased by him from H. M. Yerington, he is not entitled to recover damages for or on account of defendant's sheep having been herded or grazed upon said land."

"The jury is instructed that the plaintiff has not offered any testimony of any damage suffered by him, if any, for loss of verdure or grass on said land described in the complaint, and in arriving at the amount of damage, if your verdict should be for the plaintiff, you cannot take into consideration any loss the plaintiff may have sustained for verdure or grass eaten up or destroyed by defendant's sheep when upon said land."

If they had been given, these instructions would have told the jury that the plaintiff could not recover damages for the herding or grazing of sheep or the eating or loss of the grass and verdure on the Yerington land, which

would have been strictly correct so far as instructions go. As the right to the grass or to use the land for grazing purposes was not conveyed by Yerington to plaintiff or his assignor, the right to recover any damage for the grazing or eating of the grass, or the mere trespass of the sheep upon the land, remained in Yerington or the owner of the land, and to him, and not to the plaintiff, the defendant would be responsible in law for the eating of the grass and the destruction of the verdure.

3. Plaintiff is not entitled to recover anything on account of the Yerington land under paragraph 4 of the amended complaint, which alleges the claim for $350, or the largest item of the damage, for the grazing upon the lands described in the complaint, and which does not designate how much of this damage was done on the Yerington land, nor how much on the other land. In view of the testimony of the plaintiff that most of the grass was upon his land, possibly it may be inferred that most of the grass eaten was upon his land; but the amount of the damage which he sustained by the grazing or eating of the grass on his own land, and which he would be entitled to recover, is not shown by allegation or proof. As the plaintiff could recover only for injury to property or some right belonging to him, the error in refusing to instruct the jury that he could not recover for the grazing and eating of the grass on the Yerington land, which had not been conveyed to him, is apparent.

The elements of damage are separate, and the purpose of having them alleged separately is that they may be considered and proved separately. The claims for knocking down the wood, for filling the road and trails with rock and debris, and for tramping and choking the springs are provable and recoverable under their own allegations, and not under the one for herding and grazing the sheep upon the lands. The sheep might have eaten the grass and destroyed the verdure without committing any other damage. The right of action for injury to the wood belonging to the plaintiff was as separate from any right of action in favor of Yerington for trespassing and grazing upon the lands as if the grass

destroyed had been on the land in which the plaintiff had no interest.

After refusing these instructions, which may have resulted in the award by the jury to the plaintiff of damages for the eating of the grass and the destruction of the verdure, the owner of the land could bring a suit, and recover the damage occasioned in this regard from the defendant, who would be doubly mulcted if he could not avoid the payment of this damage in this action. These instructions did not mean that the plaintiff could not recover for any injury to his own property or right, and, if they had had been given, and the plaintiff had desired one which would have told the jury that, notwithstanding the plaintiff could not recover for the grazing and eating of the grass and verdure on the Yerington land, he was entitled to compensation for any damage which he sustained by reason of the filling and injury to the roads and trails, the trampling of the springs, and the lessening of the flow of water which he used in moving and fluming the wood, he should have drawn and presented it to the court.

**4, 5.** Over the objection of the defendant, the court allowed plaintiff to answer upon his redirect examination several leading questions which put into his mouth words of his attorney, some of which questions were:

Q. You first brought suit in Ormsby County for $299? A. Yes, sir.

Q. Under my advice?  A. Yes, sir.

Q. Didn't I tell you at that time he might pay, and it would be better to take $299 than to go all through the courts?

Mr. Curler—We object to the question on the ground that it is leading, suggestive, and hearsay, and the answer to that question would be a self-serving declaration.

The Court—Objection overruled; answer the question.

Mr. Curler—We note an exception on the grounds stated in the objection.

A. I told Mr. Chartz I wanted to sue for $800.

Q. And what was my advice?  A. You said I could not sue in the justice court for more than $300.

Q. Didn't I also advise you to sue for as little as possible in order to get the money?

Mr. Curler—Same objection.

The Court—Same ruling and exception.

A. I know you did.

The Court—Note an exception upon the grounds stated in the former objection.

A. Yes; you told me to put in the justice's court, and get quick suit of it.

Q. And sue for as little as possible because he might pay it. A. Yes, sir.

Q. Then you brought another suit in this court immediately following that, and they knocked you out?

Mr. Chartz—Strike that out.

Mr. Curler—I wish to insist upon our objection to the whole of this testimony for this reason: The fact that a matter is brought out on cross-examination does not change the rule as to the form of question. On redirect examination the same rule applies as to form, so far as the form of the question is concerned, and that the witness was asked the question on cross-examination does not give his counsel any more privilege of putting the answers in his mouth than if these questions were put upon direct examination and not upon redirect examination.

The Court—The ruling of the court will stand.

Mr. Chartz—Now, then, Mr. Anderson, after that suit in the justice's court was disposed of in whatever way it may have been, you brought a suit in this court, which counsel has referred to, in which you claimed therein $350 damages, and that was demurred to, and the demurrer sustained, and then you brought suit for $700; very likely you have forgotten. A. I don't know about that.

Q. Now, you brought that suit in Ormsby County, and they demurred to that, because you had not named the county of Douglas in it with specific local subdivision of Mallory Canyon. Didn't I advise you still to sue for a small amount to the end that Mr. Berrum might pay and not put us through a suit? * * *

Q. Did I advise you at that time to still sue for as small an amount as possible? A. Yes, sir.

Q. In order that he might pay without any further litigation? A. Yes, sir; I know you did.

Q. Then after that I further advised you as to the amount, and didn't I tell you to sue for the full amount? A. Yes, sir; you put it in for $700 instead of $800.

Q. I did? A. You forgot this $800.

Mr. Chartz—That is all. Oh, I forgot myself, for $800.

In this, and in most jurisdictions in this country, the cross-examination must be limited to matters stated in the examination in chief and questions to test the accuracy, veracity, and credibility of the witness. (*Buckley* v. *Buckley*, 12 Nev. 423, 14 Nev. 262; *Ferguson* v. *Rutherford*, 7 Nev. 385; *Cokely* v. *State*, 4 Iowa, 477; *People* v. *Miller*, 33 Cal. 99; *Houghton* v. *Jones*, 68 U. S. 706, 17 L. Ed. 503; *Hughes* v. *Coal Co.*, 104 Pa. 207; *Hurlburt* v. *Meeker*, 104 Ill. 541; Jones on Evidence, sec. 820.)

This rule does not prevent the cross-examining party from making the witness his own after the adverse party has closed his case in chief, and does not prevent the court from allowing, in its discretion, a rigid examination of the witness if he is hostile. (*Nash* v. *McNamara*, 30 Nev. 143, 16 L. R. A. n.s. 168, 144 Am. St. Rep. 694; *Houghton* v. *Jones*, 68 U. S. 706, 17 L. Ed. 503.)

On cross-examination it is competent to call out anything to modify or rebut the conclusion or inference resulting from the facts stated by the witness on his direct examination. (*Wilson* v. *Wagar*, 26 Mich. 452.)

**6, 7.** There were no good reasons for allowing questions so flagrantly leading, such as the hostility or lack of understanding of the witness, and this testimony does not come under any of the exceptions to the rule forbidding the putting to a party to the action of leading questions by his own attorney. As an excuse for asking these leading questions, it is said that when a party brings out new matter upon cross-examination he makes the witness his own, and that leading questions may be asked on reexamination. (*People* v. *Court*, 83 N. Y. 438.) But no such rule applies to new matter which is properly a part of the cross-examination of the witness, or relating to matters testing his accuracy or veracity, and it ought

not to apply to a party to the action when he is being interrogated by his own attorney. The reasons which allow a litigant to call the opposing party or a hostile witness to the stand and ply him with leading questions should ordinarily preclude the asking of leading questions on his cross, redirect, or any examination by his own attorney. If the bounds of proper cross-examination are not exceeded, and they were not in this instance, the witness is deemed to be continually the witness of the party introducing him. (Stephen's Digest of the Law of Evidence, Chase ed. art. 127, note 1.)

8, 9. The questions which the defendant's attorney asked the plaintiff relating to his having claimed, in an action brought in the justice's court and in the original complaint in this action, about half the amount of damage he claimed on the trial were proper cross-examination, because they tended to test his accuracy or vary his testimony. (Stephen's Dig. of Ev. art. 129; Jones on Ev. sec. 822.) They did not relate to new matter in any way authorizing his own attorney to ply him with leading questions. The same rule applies to any witness, but for greater reasons to a party to the action. Although on redirect examination the allowing of these leading questions was unfair and improper, it is not deemed reversible error, and especially in view of the conclusion that the judgment must be reduced or the case remanded for a new trial, under the claim that the verdict is excessive, and that the evidence will not sustain a recovery for more than $350. After it had been shown that the plaintiff had brought the suits originally for less than the amount of damage he claimed upon the trial, it would have been proper for his attorney to have asked him to explain why he had sued for less than he was claiming, and, if the leading questions had been disallowed, as they should have been, no doubt by direct questions the plaintiff's reasons would have been elicited.

Whether leading questions should be allowed is a matter mostly within the discretion of the trial court, and any abuse of the rules regarding them is not ordinarily a ground for reversal. (*State* v. *Williams*, 31

Nev. 360; 1 Greenleaf, Ev. sec. 435; Jones, Ev. sec. 819; 1 Wigmore, Ev. sec. 776; *Maguire* v. *People*, 219 Ill. 16, 76 N. E. 67; *City* v. *Witman*, 122 Ind. 538, 23 N. E. 796; *Gibson* v. *Glizozinski*, 76 Ill. App. 400; *Peters* v. *U. S.*, 94 Fed. 127, 36 C. C. A. 105; *State* v. *Whalen*, 148 Mo. 286, 49 S. W. 989.) But the improper allowing of leading questions may be so prejudicial as to require a reversal. (*Woodruff* v. *State*, 72 Neb. 815, 101 N. W. 1114; *State* v. *Hazlett*, 14 N. D. 490; 105 N. W. 617; *Turney* v. *State*, 8 Smedes & M. 104, 47 Am. Dec. 75.)

As a considerable sum, but something less than half of the $350 claimed for grazing and eating the grass, may have been allowed by the jury for grazing and eating the grass on the Yerington lands, it is evident that the judgment should not stand for the full $500 awarded by the verdict. If within ten days the plaintiff files in this court a written consent thereto, an order will be made that the amount of the judgment be reduced to $350, and that the costs of the appeal be paid by the plaintiff. If such consent is not filed, the judgment will be reversed, and the case remanded for a new trial.

NORCROSS, J.: I concur.

NOTE—MCCARRAN, J., having become a member of the court after the argument and submission of the case, did not participate in the opinion.