**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Fred JENKINS, Defendant and Appellant.**

**Cr. No. 869.**

Supreme Court of North Dakota.

Nov. 10, 1982.

Tom P. Slorby, State's Atty., Minot, for plaintiff and appellee.

Phillip D. Armstrong, Minot, for defendant and appellant.

SAND, Justice.

The defendant, Fred Jenkins (Jenkins), after a bench trial in Ward County district court, was convicted of the offense of gross sexual imposition in violation of North Da-

kota Century Code § 12.1–20–03(2).[1] He appealed.

Jenkins' conviction was based primarily upon the testimony of three witnesses, Linda Heilman, a child abuse and neglect investigator for the Ward County Social Service office, the victim's mother, and the victim, a nine-year-old girl.

Linda Heilman testified at trial that her office received a child abuse report on 2 February 1982 indicating that Jenkins had molested the victim on or about 15 January 1982. Heilman interviewed the victim. Heilman further testified that "anatomically correct dolls"[2] were used during her interview with the victim, and that, with the use of the dolls, the victim related what had happened between her and Jenkins.

The victim testified at trial,[3] over several leading-question objections by Jenkins, as to the events involving the criminal charge. At times during her testimony the victim was unable to verbally describe the contact between herself and Jenkins. The "anatomically correct dolls" were then used to help elicit testimony from the victim. This testimony essentially established that there was contact between the penis and the vulva and between their hands and their sex organs.

The victim's mother testified on direct examination that the victim told her about the incident two days afterwards.

Jenkins also testified and denied any criminal conduct. His testimony essentially corroborated the testimony of the victim concerning the events of that evening, with the exception of the criminal activity.

The first issue raised by Jenkins concerns whether or not the trial court abused its discretion in allowing the State to use verbal and non-verbal leading questions in eliciting testimony from the victim, thereby denying Jenkins the right to a fair trial. The State did not concede that any questions asked the victim during direct examination were leading. For purposes of our discussion, we will assume the questions were leading.

Rule 611(c) of the North Dakota Rules of Evidence[4] provides as follows:

1. North Dakota Century Code § 12.1–20–03 provides as follows:

"1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

a. He compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being;

b. He or someone with his knowledge has substantially impaired the victim's power to appraise or control his or her conduct by administering or employing without his or her knowledge intoxicants or other means with intent to prevent resistance;

c. He knows that the victim is unaware that a sexual act is being committed upon him or her;

d. The victim is less than fifteen years old; or

e. He knows or has reasonable cause to believe that the other person suffers from a mental disease or defect which renders him or her incapable of understanding the nature of his or her conduct.

"2. A person who engages in sexual contact with another, or who causes another to engage in sexual contact, is guilty of an offense if:

a. The victim is less than fifteen years old; or

b. He compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being.

"3. An offense under this section is a class A felony if in the course of the offense the actor inflicts serious bodily injury upon the victim, or if his conduct violates subdivision d of subsection 1, or if the victim is not a voluntary companion of the actor and has not previously permitted him sexual liberties. Otherwise the offense is a class B felony."

2. Anatomically correct dolls were described by Linda Heilman as an investigator's aid for discussing alleged sexual molestation with children, especially children who are young and have a difficult time verbalizing what has taken place. They are also used to familiarize investigators with a child's terminology for the different parts of the anatomy.

3. The record reflects that the victim was interrogated by the court prior to testifying. The interrogation by the court established the victim knew the difference between telling the truth and telling lies.

4. The explanatory note to NDREv 611 provides that our rule is substantially the same as Rule 611 of the Federal Rules of Evidence. Subdivi-

"Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily, leading questions should be permitted on cross-examination. Whenever a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."

■ This Rule gives the trial court wide discretion over the mode and order of interrogating witnesses and presenting evidence, and the trial court's ruling in that respect will not be disturbed on appeal unless the record establishes that the discretion was abused to the prejudice of the defendant. *Powers v. Martinson*, 313 N.W.2d 720 (N.D. 1981); *State v. Dwyer*, 172 N.W.2d 591 (N.D.1969); *State v. Hazlett*, 14 N.D. 490, 105 N.W. 617 (1905).

In *Powers v. Martinson, supra* at 729, we quoted with approval the following language from *State v. Hazlett:*

"It is often necessary to resort to leading questions in order to elicit facts from a witness, who, because of hostility, ignorance, diffidence or other reasons will not or cannot give fair and full answers. * * The general rule, however, is that leading questions should not be allowed. * * * The rule is a salutary one, and should never be departed from unless the circumstances are such as to warrant an exception. * * * If the record shows that the circumstances did not in fact justify the departure from the rule, and the violation of the rule is such that prejudice to the objecting party may be reasonably inferred, the appellate court will not hesitate to reverse on that ground."

These authorities recognize that circumstances may warrant the use of leading questions on direct examination of a witness.

■ In this case we must recognize the nature of the offense charged and the delicate nature of the testimony elicited from the victim. Both the embarrassment and psychological trauma of a victim involved in a sex-related crime are compounded when the victim is a child. A child understandably may be hesitant or unwilling to volunteer specific testimony concerning the actual elements of a sexual offense. These factors are all circumstances which the trial court, in its discretion, may consider in determining whether or not to permit leading questions to be asked of a complaining witness in a sex-related crime. See *United States v. Littlewind*, 551 F.2d 244 (8th Cir. 1977); *Rotolo v. United States*, 404 F.2d 316 (5th Cir.1968); *State v. Bradford*, 175 N.W.2d 381 (Iowa 1970); *State v. Jones*, 204 Kan. 719, 466 P.2d 283 (1970); *Hubbard v. State*, 2 Md.App. 364, 234 A.2d 775 (1967), *cert. denied*, 393 U.S. 889, 89 S.Ct. 208, 21 L.Ed.2d 168 (1968); *People v. Dermartzex*, 29 Mich.App. 213, 185 N.W.2d 33 (1970), *aff'd*, 390 Mich. 410, 213 N.W.2d 97 (1973); *State v. Brown*, 285 N.W.2d 843 (S.D.1979).

In this instance the record establishes that an unsuccessful attempt was initially made to have the victim state critical facts of the incident in her own language. Compare *State v. Hazlett, supra.* However, the victim was apparently nervous, timid, and reticent and did not give full answers to the questions. The "anatomically correct dolls" were then used to help the victim indicate the areas of the body which were touched. The record does not disclose that the use of these dolls was in any way suggestive. The trial judge noted that he "did not observe

sion (c) is almost identical. The Notes of Advisory Committee on Proposed Rules to Federal Rule 611(c) provides, in part, as follows:

"The rule continues the traditional view that the suggestive powers of the leading question are as a general proposition undesirable. Within this tradition, however, numerous exceptions have achieved recognition: The witness who is hostile, unwilling, or biased; *the child witness or the adult with communication problems;* the witness whose recollection is exhausted; and undisputed preliminary matters." [Emphasis added.]

Where a state rule is derived from a federal rule, any interpretation or construction given to identical or similar language by the federal courts, while not binding on this Court, are persuasive. *State v. Morris*, 316 N.W.2d 80 (N.D.1982); *State v. Rueb*, 249 N.W.2d 506 (N.D.1976); *State v. Holy Bull*, 238 N.W.2d 52 (N.D.1975). The Notes of Advisory Committee may, if persuasive, also provide guidance.

that the dolls were used or presented to her [the victim] in a highly suggestive manner. She readily pointed out the parts of the doll when she was asked to describe what parts came in contact with what other parts."

Bearing in mind these factors, we conclude that the trial court did not abuse its discretion in allowing the State to use verbal and non-verbal leading questions in eliciting the testimony of the victim.

The next issue raised by Jenkins is that his right to effective cross-examination was denied by the failure of the victim to answer questions relating to the elements of the crime.

The scope of cross-examination in a criminal case is within the sound discretion of the trial court. *State v. Cox,* 325 N.W.2d 181 (N.D.1982); *State v. Rindy,* 299 N.W.2d 783 (N.D.1980).

■ The record reflects the scope of cross-examination by Jenkins was not limited by the court, nor was Jenkins' right to cross-examination cut off by the trial court. The victim did not invoke a privilege and refuse to testify. The victim stated that she either could not remember specific parts of the incident in question or else she did not respond to questions asked by Jenkins. The responses indicated the victim was unable or unwilling to respond to some of the cross-examination.

Although the responses given by the victim did not specifically answer the questions asked by Jenkins, we do not believe those responses are a denial of the defendant's right to confront the witness. Rather, we believe those responses raised a credibility issue to be resolved by the trier of fact, which in this instance was the trial court. The court noted some lack of response by the victim and apparently considered this factor in judging the credibility of the witness. See *State v. Cox, supra.*

Jenkins also contended that the trial court erred in admitting hearsay declarations of the victim during the testimony of the victim's mother.

The mother of the victim testified over objection on re-direct examination, that about two days after the incident the victim had told her that the defendant had touched her but that penetration did not occur.

Rule 801(d), NDREv, provides, in part, as follows:

"A statement is not hearsay if:

(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

The record reflects that Jenkins' cross-examination of the victim, the victim's mother, and Linda Heilman attempted to establish that the victim or her mother had made up a story concerning the charged crime.

■ We believe the statements made by the victim, and testified to by the victim's mother, were not hearsay because, pursuant to Rule 801(d)(1), NDREv, the declarant (the victim) testified at trial and was subject to cross-examination concerning the statements, and the statements were consistent with her testimony and were offered to rebut an express or implied charge against her of recent fabrication.

■ The last issue raised by Jenkins is that the evidence was insufficient to prove all the elements of the crime beyond a reasonable doubt. Jenkins correctly points out that the State charged him with "sexual contact" under NDCC § 12.1–20–03(2). (See footnote 1.) Pursuant to NDCC § 12.1–20–02(2), "sexual contact" means a touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire. Jenkins contended that the element of touching was not established by sufficient evidence because the evidence was minimal and unreliable.

Recently, in *State v. Cox, supra* at 184 we said:

"In determining the sufficiency of evidence to sustain a conviction, we will not

weigh conflicting evidence nor judge the credibility of witnesses. Upon review, we will look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to support the conviction. *State v. Olson,* 290 N.W.2d 664 (N.D.1980)."

In *State v. Olmstead,* 246 N.W.2d 888, 890 (N.D.1976), we stated:

"In criminal cases we have repeatedly held that 'at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.' *State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D. 1973), and cases cited therein; *State v. Neset,* 216 N.W.2d 285, 287 (N.D.1974)."

We have already noted the difficulties encountered in eliciting testimony from the nine-year-old victim. The inferences to be drawn from her testimony and the credibility attributed to her responses are questions for the trier of fact. Our review of the evidence presented through the testimony of the victim supports the trial court's finding of touching to satisfy the statutory requirement.

Jenkins also contended that no evidence was presented to establish that the touching was for the purpose of arousing or gratifying sexual desire and that, therefore, that element was not established by the evidence. The trial court inferred that the touching was for the purpose of arousing or satisfying sexual desire, and Jenkins contended that there must be "clear and detailed" testimony before that element could be established by inference. Jenkins cited the following quote from *State v. Smith,* 394 A.2d 259, 262 (Me.1978), to support his position:

"The burden here was clearly upon the State to produce evidence convincing in its effect beyond a reasonable doubt that the sexual contact was '*for the purpose of arousing or gratifying sexual desire.*' The description given by the child victim as to the details of the incidents alleged to have been the unlawful sexual contact could not possibly permit any conclusion by a fact-finder but that such unlawful sexual contact was had for the purpose of arousing and gratifying the appellant's '*sexual desire.*'" [Emphasis in original.]

 A careful reading of *State v. Smith, supra,* and the above cited quote, reflects an inference or conclusion by the fact-finder which may be drawn from the details of the incident. Whether or not the inference that the touching was for the purpose of arousing or gratifying sexual desire is within the province of the trier of fact. The very nature of determining whether or not certain acts were done to arouse or satisfy a sexual desire, or that they did, can be determined primarily from the acts themselves as distinguished from outright admissions.

Although the evidence of the touching is not as "clear and detailed" as Jenkins would require it to be, we believe that given the finding of touching, the inference can permissibly be drawn that the touching was for the purpose of arousing or gratifying Jenkins' sexual desire.

The judgment of conviction of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.